[No. 20297. In Bank. — August 25, 1887.]

# THE PEOPLE, RESPONDENT, v. MARGARET T. KERRIGAN, APPELLANT.

CRIMINAL LAW — EXCLUSION OF SPECTATORS FROM COURT-ROOM — PUBLIC TRIAL. — During the progress of a criminal trial, the defendant having become greatly excited, so as to disturb the progress of the trial, the court made an order that the lobby outside of the court-room should be cleared of spectators, and that no persons, except officers of the court, reporters of the public press, friends of the defendant, and persons necessary for her to have on the trial, should be allowed to remain. The order did not require the doors of the court-room to be closed, and was made on behalf of the defendant, as well as to preserve order, because the attendance of a crowd of spectators in the court-room tended to excite her. *Held*, that the order was not in violation of the defendant's right to a public trial.

ID. — MORAL INSANITY NOT A DEFENSE. — Moral insanity, as distinguished from mental derangement, is not an excuse for crime; nor does it furnish an exemption from punishment therefor.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*D. T. Sullivan*, and *Jasper Robberson*, for Appellant.

*Attorney-General Johnson*, *J. A. Hosmer*, and *E. B. Stonehill*, for Respondent.

PATERSON, J. — The defendant was convicted of an assault with intent to commit murder. The defenses interposed at the trial were, not guilty and insanity.

During the progress of the trial in the court below the defendant became greatly excited, and indulged in profane and abusive language, addressed to the judge and other officers of the court. Her conduct created so much commotion among the spectators that the trial was seriously interrupted, and the court found it necessary to make an order excluding spectators from the court-room.

Appellant claims that she was deprived of the constitutional right of a public trial by the making and enforcement of this order.

There is some controversy as to the scope of the order, — which was not entered in the minutes at the time, — but the judge certifies that the order was "that the lobby outside of the court-room should be cleared of spectators, as their presence tended to irritate and excite the defendant, and that no persons, except officers of the court, reporters of the public press, friends of the defendant, and persons necessary for her to have on said trial, should be allowed to remain."

It appears further, from the statement of the judge, that no order was made requiring the doors to be closed, and that, in fact, the friends of defendant and reporters were permitted to come and go at will; that the order was made by the court on behalf of the defendant, as well as to preserve order, because the attendance and conduct of a large crowd of spectators in the court-room evidently tended to excite the defendant; and it is apparent from the affidavits, showing the conduct of the defendant and many of the spectators, that such was the fact.

In our opinion, the order and action of the court, as shown by the bill of exceptions, were not in violation of the defendant's right to a public trial. It was proper, we think, under the circumstances, to exclude from the court-room those who were excluded, not only because of the vulgar and profane language of the defendant

herself, but because such action was evidently necessary to protect the court from indignity and indecorum. No actual injury to the defendant is shown. It is not shown that any person who could have been of any service to the defendant on her trial was excluded.

While it is very important that all the rights guaranteed by the constitution to a person charged with crime should be fully and fairly awarded to him, it is also important that courts of justice should be upheld in the enforcement of all necessary and reasonable rules for the orderly, speedy, and effective conduct of their duties. (*People* v. *Swafford*, 65 Cal. 224; *Grimmett* v. *State of Texas*, 2 S. W. Rep. 663; Code Civ. Proc., sec. 128.)

It is claimed that the court erred in its charge to the jury upon the subject of moral insanity; that the court, in effect, took the evidence upon this question from the jury's consideration, by instructing them, in substance, that there is no such thing as moral insanity. Counsel for appellant has not pointed out the particular instruction to which his objection is directed; but the following, from those given by the court of its own motion, evidently shows the views of the court as expressed to the jury:—

" In our courts of law there is no such doctrine established or recognized as moral insanity, distinguished from mental derangement, as an excuse for crime, and as an exemption from punishment therefor. There is no such type of insanity recognized in our courts, as, for instance, that a person may steal your property, burn your dwelling, murder or attempt to murder you, and know at the time that the deed is a criminal act and wrong in itself and deserves punishment,— having the ability to correctly reason on the subject, and yet be held guiltless and not punishable on the ground solely of a perversion of the moral senses."

It may be true, as claimed by appellant's counsel, that

the weight of authority in this country is against the doctrine here enunciated. The authorities cited by him support his contention that "moral insanity is now as well understood by medico-jurists, and almost as well established by judicial recognition, as the intellectual form."

But it is not an open question in this state. The instruction quoted is within the test of insanity as given by this court in former decisions, and we adhere to the rule of decision with confidence in the correctness of the principle established.

If the defendant had sufficient mental capacity to appreciate the nature of her act; if she knew and understood that she was violating the rights of another by an act which was in itself wrong, and which was prohibited by the law, and the commission of which would entail punishment upon herself,—if she had the capacity thus to appreciate the character and comprehend the consequences of her act, she is responsible to the law for the act thus committed, and must be judged accordingly, regardless of any perversion of the moral senses, however great; for if great moral depravity should be taken as a test of insanity, then the highest degree or enormity of crime would, by virtue of its own atrocity, furnish the best evidence of insanity on behalf of the one who committed the act.

The third point relied upon by the appellant is, that the verdict of the jury is contrary to the evidence. It is claimed that the defense of insanity was established by a preponderance of evidence, and that there is no testimony, in fact, sufficient to cause a substantial conflict. To support this contention we should have to hold that the testimony of Dr. Dozier, a physician of twenty years' practice, eleven of which were devoted exclusively to the patients of the Napa Insane Asylum, is unworthy of consideration or belief. This we cannot do. The witness, as first assistant physician of the asylum, had defendant

under his personal observation for a period of about six weeks, and testified that he never saw her, and never spoke to her at any time while she was under his charge, when she impressed him as being an insane person.

There was other evidence in the case which tended to corroborate Dr. Dozier in his theory that her malady was that of extreme moral depravity, or moral insanity only, and that she was capable of distinguishing right from wrong.

We see no errors, and the judgment and order are affirmed.

SHARPSTEIN, J., TEMPLE, J., SEARLS, C. J., McFAR-LAND, J., and THORNTON, J., concurred.

Rehearing denied.