STATE v. MICHAEL CALLAHAN.[1]

January 18, 1907.

Nos. 15,017—(15).

**Evidence.**

The verdict is justified by the evidence.

**Impeachment of Witness.**

It appearing from the evidence that the prosecutrix was induced to go alone with defendant in his boat upon the river, thus giving opportunity, it was proper, to lay the foundation for impeachment, as well as to characterize subsequent conduct and test the credibility of his denial, to ask him if he had not, about two years previous, stated to a third person that he would get the prosecutrix out in his boat and would take good care that she was alone; and, the statement having been denied, it was proper to show by such party that the statement was made.

**Exclusion of Public from Trial.**

When the spectators at a criminal trial of lascivious or immoral character are so obtrusive as to embarrass a witness during the examination, and it becomes apparent to the trial court that the due administration of justice is being impeded, the court may temporarily clear the courtroom of all persons except court officers, counsel, and witnesses, and the defendant, without infringing upon defendant's right to a public trial. Although the record does not expressly show a withdrawal or limitation of the order, it will be inferred that it was made for a temporary purpose only, and that it was not enforced after the reason calling it into existence ceased to exist.

Defendant was convicted in the district court for Itasca county of the crime set forth in the opinion and sentenced to confinement in the state prison at hard labor for thirty months. From the judgment of conviction and sentence, and from an order of Spooner, J., denying a new trial, defendant appealed. Affirmed.

*H. B. Fryberger,* for appellant.

*Edward T. Young,* Attorney General, and *George H. Spear,* County Attorney, for the State.

[1]Reported in 110 N. W. 342.

LEWIS, J.

Defendant was indicted for the crime of rape, and was convicted of assault with intent to commit the same. The evidence contained in the record goes into full details; the acquaintance of the defendant and the prosecutrix; the opportunity for inducing her to proceed alone with him in a boat which defendant was operating on the Mississippi river; the excuses manufactured for prolonging the voyage down the river upon the occasion, running far into the night; and the admissions of defendant as to his conduct and treatment of her while in the boat. The prosecutrix is corroborated by many events which throw much light upon the matter. This consisted of delay in the journey, as evidenced by the time of arrival at the Gary house; the fact that she had been in the river and her clothing wet; the declarations of the prosecutrix on the following morning of what had occurred, and her condition at that time; the evidence of the witnesses who heard screams of a woman and loud talking—the voice of defendant being recognized. From all of the evidence, which is very voluminous, we unhesitatingly come to the conclusion that the jury would have been fully justified in finding the defendant guilty as charged in the indictment, instead of the lesser offense.

During cross-examination of defendant he was asked the following question: "At or about the time specified did you not have a conversation with Mrs. Broleau, in which you told Mrs. Broleau that you would get Mary Kersting out in your boat, and you would take good care that she was alone, or words to that effect?" This was objected to as incompetent, irrelevant, and immaterial, and not proper cross-examination, and relating to a period too remote. The objection was overruled, and the witness answered: "I never remember of having any conversation with Mrs. Broleau in regard to that whatever." Mrs. Broleau was then called as a witness by the state, and testified that defendant stated to her, about two years before, that he would get Mary Kersting out in a boat, and would take good care that she was alone. This question was objected to on the ground that it was incompetent, irrelevant, and immaterial, and, if for the purposes of impeachment, was not the same question as was put to defendant. The objection was overruled, and the witness answered in the affirmative. Practically the same questions were asked of the witness Stroebel, and the same objections entered. Although the period designated was quite remote, that fact alone did

not render the evidence improper for the purpose of establishing the foundation for impeachment, or for the purpose of indicating the state of mind of defendant with reference to the prosecutrix, provided the incident referred to was of such a character as to have a natural tendency to reflect his subsequent state of mind. "Previous conduct of defendant tending to show a lascivious disposition on his part toward the prosecutrix is admissible." State v. Crouch, 130 Iowa, 478, 107 N. W. 173; Barnes v. State, 88 Ala. 204, 7 South. 38, 16 Am. St. 48.

The defendant admitted that the prosecutrix was with him in his boat alone, after night, but denied absolutely that any assault was committed. Under such circumstances, where there is a direct conflict of testimony, the trial court may, within reasonable discretion, admit any declarations or matters otherwise collateral which would tend to characterize or corroborate the credibility of either party. Philips v. Mo, 91 Minn. 311, 97 N. W. 969. The defendant had been operating up and down the river as a logger and running his steam launch for two or three years at least. He had been acquainted with the prosecutrix during that period. She was accustomed to go up and down the river; hence there was opportunity for him to have his attention directed to her two years before, and, in the light of subsequent events, it cannot be said that the previous declarations did not have some connection or tendency to characterize his later conduct.

The principal question requiring consideration is this: Was the defendant deprived of the constitutional guaranty of a public trial as a result of the order of the court which cleared the courtroom of all spectators? For a clear understanding of the effect of the order, an examination of the proceedings in that connection is necessary. As is usual in such cases, and perhaps in this case it was called for, the prosecutrix was required to minutely describe how the alleged offense was committed. She had stated in general terms that the defendant had thrown her down in the bottom of the boat and assaulted her; that he had sexual intercourse with her. Evidently her modesty prevented her from speaking in those direct terms readily suggested to the vulgar mind, and her mastery of the language was not sufficient to enable her to avoid vulgar phraseology and at the same time describe the act with legal exactness. She was asked whether defendant introduced any part of his body into hers, and she answered,

100 M.—5

Yes. Q. Did the defendant have sexual intercourse with you at that time? A. Yes, sir. [This question, being objected to as leading, was withdrawn. The witness was asked:] What did he do to you at that time? A. He assaulted me; took advantage of me. The Court: Tell what he did. A. I don't know that I can tell it any plainer than that. Q. I understand you to say, Miss Kersting, that the defendant introduced his organ into yours? (Objected to as leading. The Court: That is leading. You tell just what happened.) A. I said he took advantage of me. I could not fight any longer.

The effort seemed to be to get the girl to describe in detail each particular movement of each party necessary to constitute the act of sexual intercourse. The condition of her underclothing, the marks upon her body, and the extent of her resistance were the subject of long and minute questioning in opposition to the most persistent interruptions and objections, mostly frivolous and uncalled for. Yet, after all this, the county attorney, being fearful that the crime of rape had not been made out, returned to the subject:

Q. When Michael Callahan threw you in the bottom of the boat, as you have testified, and did to you what you have testified he did, you did or did not give your consent? A. No, sir; I did not. Q. Why didn't you resist him further? A. I wasn't able. Q. Why weren't you able? A. I was exhausted and overcome, and all numb from the cold. Q. Why were you exhausted? From what cause? A. From fighting and being in the water so long. * * * Q. You will recall, Miss Kersting, that you stated a while ago that the defendant put a part of his body into yours. You remember that? A. Yes, sir. Q. What part of your body do you refer to, the generative organ or private part? (Objected to as incompetent, irrelevant, and immaterial, and leading. Objection sustained.) Q. Into what part of your body, Miss Kersting, did the defendant introduce a portion of his? A. The lower part of my body. Q. Can you describe it in any other way? A. I don't know of any other way to describe it.

At this point the prosecuting attorney appears to have rested as to the witness. Whereupon the court remarked: "Under the testimony

as it stands I can submit only assault in the second degree." The record here shows a recess of ten minutes. Upon the reassembling of court, Mary Kersting was called to the stand. Whereupon counsel for defendant moved to strike out the question, "Did the defendant have sexual intercourse with you?" upon the ground that it was leading and called for a conclusion. "The Court: I will let it stand for the present. Attorney for Defendant: With the privilege of renewing the motion? The Court: Yes, sir." Then follows the order which is the subject of the present discussion.

> The Court: Mr. Sheriff, you will rid the courtroom of everybody except officers of the court, counsel, and witnesses, and the defendant.

Counsel for defendant objected to the order upon the ground that it deprived the defendant of a right guarantied to him by the constitution and upon the further ground that it seriously prejudiced the defendant's case. The objection was overruled, and the order is assigned as error. The witness was then further examined until she described the act of sexual intercourse to the apparent satisfaction of the court. The record does not disclose any other reason for the court's order than such as may be inferred from the proceedings as above detailed. If any subsequent order was made annulling or limiting the previous one, the record is silent on the question. The certificate of the trial judge states that the settled case contains all the evidence offered or introduced on the trial, all objections, rulings, exceptions, and orders, and all other proceedings in such trial. Such being the state of the record, the following questions are necessarily presented for consideration: May it fairly be inferred from the record that the order was made for a temporary purpose only, and was enforced only so long as the conditions continued which called for such action?

Some of the principles underlying the right of restricting the attendance upon a public trial are stated by Mr. Cooley in his work on Constitutional Limitations (7th Ed.) at page 441. They are briefly as follows: A due regard to public morals and public decency requires that at least the young be excluded from hearing and witnessing the evidences of human depravity sometimes brought out in a trial. This right of exclusion may apply also, within reasonable bounds, to persons where it is

apparent their motives in attending the trial are actuated by prurient curiosity. But an examination of the authorities shows that the courts have also recognized the right of temporary exclusion, for the further purpose of securing the proper administration of justice, when the trial is interrupted by an obtrusive mob, which tends to embarrass the witnesses or detract from the decorum of the court.

It will only be necessary to refer briefly to a few leading cases. It is not an infringement of the right to a public trial to clear the lobby outside the courtroom of spectators, and to exclude all persons from the courtroom except officers of the court, press reporters, friends of defendant, and persons necessary for him to have at the trial; it appearing that the proceedings were seriously interrupted by the abusive language and unseemly conduct of defendant. People v. Kerrigan, 73 Cal. 222, 14 Pac. 849. But the court has no authority to exclude from the courtroom during the entire trial all persons except the officers of the court and defendant; no reason appearing for such order. People v. Hartman, 103 Cal. 242, 37 Pac. 153, 42 Am. St. 108. It is an interference with a public trial, as guarantied by the constitution, to direct an officer to stand at the door of the courtroom and see that the room is not overcrowded, but that all respectable citizens be admitted and have an opportunity to get in when they should apply. People v. Murray, 89 Mich. 276, 50 N. W. 995, 14 L. R. A. 809, 28 Am. St. 294. In that case the court reviews many of the authorities, and distinguishes People v. Kerrigan, supra. Among other things, the court said: "Must a citizen who wishes to witness the trial of a person accused, whether he be a friend, an acquaintance, or a stranger to the accused, present to the police officer stationed at the door of the temple of justice a certificate of his respectability?" After the filing of the decision in People v. Murray, supra, the legislature of the state of Michigan passed an act authorizing the presiding judge, in criminal cases, in his discretion, to exclude all persons not necessarily in attendance, when the evidence was licentious, lascivious, degrading, or peculiarly immoral; but the supreme court of Michigan declared that the act was unconstitutional in a case similar to the one before us, where the court made a general order excluding everybody except those interested in the trial. People v. Yeager, 113 Mich. 228, 71 N. W. 491. On the contrary, in Benedict v. People, 23 Colo. 127, 46 Pac. 637, it was held not to be error to exclude from the

courtroom during the progress of the entire trial all persons except members of the bar, officers of the court, students at law, and witnesses. Grimmett v. State, 22 Tex. App. 36, 2 S. W. 631, 58 Am. 630, was a case similar to the one before us. The court cleared the courtroom during the cross-examination of a witness for the state, and the order was based upon the ground that the witness was embarrassed by the situation, and that the audience, notwithstanding the efforts of the court and officers, persisted in laughing and making a disturbance. To the same effect are Lide v. State, 133 Ala. 43, 31 South. 953; State v. Brooks, 92 Mo. 542, 5 S. W. 257, 330; Myers v. State, 97 Ga. 76, 25 S. E. 252.

Applying these principles, and conceding that a sweeping and unlimited order clearing the courtroom throughout the trial would be error, we are of the opinion that it affirmatively appears from the record that the prosecutrix was seriously embarrassed by the presence of a crowd of spectators, and that by reason of the situation the court and county attorney were unable to elicit from the witness such clear and definite statement of the facts as seemed necessary in such a case. We think it fairly appears from the record that the situation was a temporary one, and that the order was made simply to relieve the condition with reference to that particular witness, and, while the record does not expressly show that the order was thereafter rescinded, limited, or modified, yet the fair inference from what transpired is that it was not enforced when not necessary. Such being the state of the record, we hold that there was no interference with defendant's constitutional right to a public trial.

The other assignments do not require special mention.

Order affrmed.

ELLIOTT, J. (dissenting).

This record shows affirmatively that the defendant was deprived of the right to a public trial, which is secured to him by the express and unqualified language of the constitution. The trial judge, on his own motion and over the objection of the defendant, directed the sheriff to "rid the courtroom of everybody except officers of the court, counsel, and witnesses, and the defendant." He certifies that the record contains all the evidence offered or introduced, the charge of the court in

full, all objections, rulings, exceptions, and all other proceedings at such trial. There is no intimation even that the audience was not orderly and respectful, or that the spectators persisted in laughing and making a disturbance. It does not appear that the public was excluded only during the cross-examination of the complaining witness. No reasons for the order excluding the public are stated. The existence of reasons is inferred in the opinion of the majority from a silent record. The statute gives the court the right to exclude persons under sixteen years of age from the courtroom during the trial of certain kinds of cases, but the right to a public trial is carefully guarded. It may be conceded that the court has the right to exclude a riotous and disorderly body, but the record should show that such a condition existed. It cannot be presumed from the mere fact that the court ordered the public to be excluded. The burden is on the state to show a reason, if any existed, for depriving the defendant of his constitutional right. I do not find anything in the constitution which justifies the court in holding that the constitutional right to a public trial is to be measured by the degree of nervousness of a susceptible complaining witness. Nor do I find anything in the constitution which says that the defendant may be deprived of the right of a public trial, when it is necessary in order to enable the state "to elicit from the witness such a clear and definite statement of the facts as seem necessary in such a case."

I am therefore constrained to dissent.