## DAVIS et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   December 31, 1917.)

No. 4558.

1. CRIMINAL LAW ⊜➝635—TRIAL—"PUBLIC TRIAL"—WHAT CONSTITUTES.
   Under Const. U. S. Amend. 6, declaring that in all criminal prosecutions the accused shall enjoy the right to a public trial, it is error to exclude all persons excepting relatives of the defendants, members of the bar, and newspaper reporters, because feeling between the partisans of the prosecution and defense had risen to a high point, and it was reported that some of the witnesses were intoxicated;' it appearing that, though the courtroom had become crowded, the court had previously merely cleared the aisles, and that many spectators who were decorous were excluded, only a few persons being admitted through the favor of the bailiff, and therefore such direction to clear the courtroom must be deemed to have deprived defendants of a public trial.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Trial.]

2. CRIMINAL LAW ⊜➝1163(2)—TRIAL—HARMLESS ERROR.
   Where the order of the court directing that the courtroom be cleared of all spectators except relatives of the defendants, members of the bar, and newspaper reporters deprived defendants of a public trial guaranteed by the Constitution, prejudice will be implied, and an affirmative showing that defendants were harmed is unnecessary to justify reversal.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Jack Davis and others were convicted of crime, and they bring error. Reversed and remanded.

S. M. Rutherford, of Muskogee, Okl. (De Roos Bailey, of Muskogee, Okl., on the brief), for plaintiffs in error.

W. P. McGinnis, Sp. Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before HOOK, Circuit Judge, and REED and BOOTH, District Judges.

PER CURIAM.  The only question in this case that merits discussion is whether the defendants who were convicted of a crime against the United States were given a public trial as required by the Sixth Amendment to the Constitution.

[1] .Near the conclusion of the trial, which lasted several days, a night session of the court was held for the arguments to the jury. When the jurors were in the box, and just before the court convened, the courtroom, which had become crowded, was by the direction of the trial judge cleared of all spectators except relatives of the defendants, members of the bar, and newspaper reporters, and a bailiff at the door was instructed to admit none but those of the excepted classes.   The bailiff thereafter admitted a few others, but it was by way of favor of the court officers.   Some' citizens against whom no objection appeared on account of character or condition afterwards sought and

⊜➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were denied admission. The seats in the audience part of the court-room back of the bar rail would have accommodated at least 100 spectators. About 25 were allowed to be present. Within the rail, besides the court officials and the defendants, a couple of women relatives of the latter, a few newspaper men, and about 10 members of the bar were present. The reasons for the action of the court were these:

The crime of which defendants were charged had connection with a train robbery, and the trial, which was held at Muskogee, Okl., excited more than ordinary interest. At previous sessions the court-room was crowded with spectators, so much so that in one instance the court directed the bailiffs to clear the aisles, so that witnesses would not be impeded when called. Considerable ill feeling had developed between the defendants, their relatives and friends, and some of the witnesses for the prosecution, and the court had placed the latter in the custody and care of an officer. Precautions had also been taken that defendants should come unarmed into the courtroom. On the evening of the night session an encounter occurred in a restaurant, in which a relative of one of the defendants hit a witness for the prosecution across the face with a newspaper. This was reported to the court; also that one or more of the witnesses in the courtroom were intoxicated. It does not appear that the courtroom was crowded beyond its seating capacity when the order to clear it was made, or that any person was making a disturbance or threatening to do so, or that there was any well-founded apprehension that a disturbance would occur.

We appreciate the better position of the trial court to appraise the significance of surrounding conditions, but we cannot avoid the conviction that it acted upon the representations of those who did not adequately realize the great importance of keeping a place where the justice of the nation is judicially administered a public place for the admission of peaceful citizens. An intoxicated man could have been excluded or removed; the aisles and passageways could have been kept clear; when the seats were filled, other spectators could have been denied at the door; if the noise in the lobbies interfered with the proceedings, the lobbies could have been cleared; and individuals whose conduct outside the courtroom made their presence within a menace might have been excluded. But it is quite a different thing to exclude the public generally, regardless of their conduct or character.

The Sixth Amendment provides that "in all criminal prosecutions the accused shall enjoy the right to a * * * public trial." The provision is one of the important safeguards that were soon deemed necessary to round out the Constitution, and it was due to the historical warnings of the evil practice of the Star Chamber in England. The corrective influence of public attendance at trials for crime was considered important to the liberty of the people, and it is only by steadily supporting the safeguard that it is kept from being undermined and finally destroyed. As the expression necessarily implies, a public trial is a trial at which the public is free to attend. It is not essential to the right of attendance that a person be a relative of the accused, an attorney, a witness, or a reporter for the press, nor can those classes be taken as the exclusive representatives of the public. Men may have

no interest whatever in the trial, except to see how justice is done in the courts of their country.

The qualifications of the broad scope of the constitutional provision and of like provisions in the Constitutions of the states are few, and are based upon considerations of public morals and peace and good order in the courtrooms. They are definitely illustrated in cases in which the exclusion of some or all of the spectators has been upheld.

In Grimmett v. State, 22 Tex. App. 36, 2 S. W. 631, 58 Am. Rep. 630, the audience was temporarily excluded during the cross-examination of a young girl who was a witness in a trial for rape. The court certified that persons in the audience persisted by their laughter in disturbing the proceedings and embarrassing the witness, and it was impossible to distinguish them from the others.

People v. Kerrigan, 73 Cal. 222, 14 Pac. 849, was a case of violent and abusive conduct of the defendant, and disorder in the audience. The courtroom doors were not closed, and the defendant's friends and reporters were allowed to enter and leave at will.

In Benedict v. People, 23 Colo. 126, 46 Pac. 637, the trial involved a recital of disgusting details. Members of the bar, officers of the court, law students, and witnesses were allowed to remain.

State v. Nyhus, 19 N. D. 326, 124 N. W. 71, 27 L. R. A. (N. S.) 487, was a prosecution for the rape of a girl under 14 years of age. The order excluding auditors excepted all jurors and litigants at the term, attorneys, witnesses for both parties, "and any other person or persons whom the several parties to the action may request to remain."

Reagan v. United States, 120 C. C. A. 627, 202 Fed. 488, 44 L. R. A. (N. S.) 583, was also a case of rape. Court officers, witnesses for both parties, and members of the bar were not excluded.

In State v. Callahan, 100 Minn. 63, 110 N. W. 342, during a part of the examination of the prosecutrix in a trial for rape, the courtroom was cleared of all persons excepting counsel, officers of the court, witnesses, and of course the defendant. The court held that, while a sweeping, unlimited order would have been erroneous, the situation was but temporary, and it appeared that the prosecutrix was so embarrassed by the crowd that counsel for the state was unable to elicit from her a definite statement of what occurred.

In Myers v. State, 97 Ga. 76, 25 S. E. 252, the court, in passing on defendant's complaint of an overcrowding of the courtroom, said that the requirement of a public trial did not prevent the exclusion of spectators for lack of seating capacity.

In Lide v. State, 133 Ala. 43, 31 South. 953, the clearing of the courtroom was because of applause by the spectators of remarks of counsel for the state. It was said:

"It was not only the power, but the duty, of the court to prevent demonstrations of approval or disapproval by spectators in the trials of causes, and if need be to this end to exclude the offending parties from the courthouse."

In People v. Swafford, 65 Cal. 223, 3 Pac. 809, all persons were excluded except the judge, jurors, witnesses, and persons connected with the case. It was held that the word "public" in the Constitution was

used in opposition to secret, and that defendant was not denied a public trial. This is an extreme case.

State v. Brooks, 92 Mo. 542, 5 S. W. 257, 330. In the early stages of the selection of the jury bailiffs at the courtroom door refused to, admit any one except jurors, witnesses, officers of the court, and those having business in court. When the court was informed of this, it said it was without its direction, and it ordered that all persons be admitted until the seats were filled. It was held on appeal that this was not a denial of a public trial, but that there might have been ground for the complaint, had the order not been made, or had a request for a re-examination of the jurors questioned during the time been asked and denied.

In State v. McCool, 34 Kan. 617, 9 Pac. 745, the trial court at the instance of the prosecuting attorney requested ladies to leave the courtroom, as the attorney was about to refer to some evidence unfit for them to hear. This was held proper. The complaint, however, was not that defendant was denied a public trial.

The above are most of the cases in which limited admissions have been upheld. We turn now to those in which they have been disap-proved.

In State v. Osborne, 54 Or. 289, 103 Pac. 62, 20 Ann. Cas. 627, the charge was rape. Before the taking of testimony the court directed the sheriff as follows:

"You will please exclude everybody from the courtroom except the defend-ant, the attorneys engaged in the trial of this case, the jury, and officers of this court, and the witnesses while on the witness stand; and you will ob-serve this order so to exclude the public from the courtroom during the tak-ing of testimony upon this trial."

The carrying out of this order was vigorously condemned by the Su-preme Court of the state. It will be observed that there was no selec-tive exclusion with reasonable regard for the nature of particular phases of the trial or the testimony.

Tilton v. State, 5 Ga. App. 59, 62 S. E. 651, was a case of adultery with a 14 year old girl. The state Constitution required a public trial and a state statute authorized trial courts to clear the courtroom of "all or any portion of the audience" in cases where the evidence "relates to improper acts of the sexes and tends to debauch the morals of the young." As soon as the jury was impaneled the court ordered "the courtroom cleared of every one not connected with the case." It was held on appeal that the court might properly have excluded "all minors, all women, and all others who failed to behave decorously, or who interfered in any manner with the decent conduct of the case," but that its order was too sweeping and denied the defendant a public trial.

In State v. Hensley, 75 Ohio St. 255 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep. 734 9 Ann. Cas. 108, the trial was adjourned from a large courtroom to a small one for the taking of testimony of an immoral or obscene nature, and the court directed the sheriff to admit none but the jury, defendant's counsel, members of the bar, newspaper men, and a named witness for defendant. It was held that the exclusion was too general for a public trial.

In People v. Hartman, 103 Cal. 242, 37 Pac. 153, 42 Am. St. Rep. 108, the charge was assault with intent to commit rape. The action of the trial court in excluding all persons from the trial, except the officers of the court and the defendant, was said on appeal to be without justification in the law of modern times. The prior decision in People v. Swafford, supra, was held unsound. The court said:

"The trial should be 'public,' in the ordinary common-sense acceptation of the term. The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, as we have before suggested, with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters, and youth of tender years, and to do other things which may facilitate the proper conduct of the trial."

People v. Murray, 89 Mich. 276, 50 N. W. 995, 14 L. R. A. 809, 28 Am. St. Rep. 294, was a case of murder. The attention of the trial court was directed to the fact that a policeman stationed at the courtroom door was denying admission to respectable citizens, but it refused to take action. It was shown by affidavits that there was ample accommodation in the courtroom, that but few were admitted, and that many were refused. The Supreme Court of Michigan held that defendant had not been accorded a public trial. It questioned whether respectability was a test of the right of access to a public trial, and, if so, whether it should be left to the knowledge or discretion of a police officer. After this decision was rendered a statute was enacted conferring discretion upon a trial judge to exclude from the trial or any portion thereof all persons "except those necessarily in attendance," whenever it appeared that "evidence of licentious, lascivious, degrading, or peculiarly immoral acts or conduct" would probably be given.

In People v. Yeager, 113 Mich. 228, 71 N. W. 491, the defendant was charged with assault with intent to commit rape, and the trial court, in applying the above-mentioned statute, allowed representatives of the press to remain in the courtroom, asked all others to retire, and directed an officer to admit any who were relatives or friends of the defendant. It finally announced:

"I have told the officer not to let anybody in here who is not either a friend of the complaining witness or of the defendant. He will ascertain that fact as they apply for admission. All such people will be admitted, and the public will be kept out."

The Supreme Court of the state held the trial not a public one. It said:

"Who is to decide who are the friends of the accused? The law makes no such test, but allows all citizens freely to attend upon any trial, whether civil or criminal."

We think these latter cases are well founded in principle and reason, and that in the case at bar the defendants did not have the public trial contemplated by the Sixth Amendment.

[2] It is urged that no prejudice to defendants was shown. A violation of the constitutional right necessarily implies prejudice and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, per-

sonal injury. To require him to do so would impair or destroy the safeguard.

The sentences are reversed, and the cause is remanded for a new trial.