## UNITED STATES v. KOBLI.
### No. 9547.

United States Court of Appeals
Third Circuit.

Argued June 25, 1948.

Reargued Nov. 16, 1948.

Decided Feb. 3, 1949.

920

Joseph P. Brennan, Asst. U. S. Atty., of Scranton, Pa., for the United States.

Ulric J. McHale, of Scranton, Pa., for appellant.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, O'CON-NELL and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The principal question which this appeal presents, and the only one which we need discuss, is whether the appellant was accorded a public trial as guaranteed by the Sixth Amendment to the Constitution. She and three others were convicted in the United States District Court for the Middle District of Pennsylvania upon an indictment charging the violation of the Mann Act [1] and conspiracy to violate that act. The charge involved the allegation that the defendants had participated in a scheme to transport one Mary Kovacs Riviello, an eighteen year old niece of the appellant, from Scranton, Pennsylvania, to Buffalo, New York, there to place her in a house of prostitution, and that the scheme was carried out.

The case evidently attained some notoriety and on the day when the trial was to be commenced the courtroom in which it was to be tried was filled to overflowing with spectators. Included among those who had apparently been attracted by the lurid nature of the expected testimony were a great many young girls. When the trial judge entered the courtroom preparatory to calling the case for trial it appeared that there was not enough room to permit the admission of the members of the jury panel, who were then in another courtroom in the building. The trial judge also noticed the great number of young girls present. He thereupon asked whether any of the defendants' counsel would object to a court order clearing the courtroom of all people except jurors, witnesses, lawyers and members of the press. Counsel for the other three defendants stated that they had no objection to such an order [2] but appellant's lawyers objected and requested "a trial conducted before the public". The trial judge then asked the Assistant United States Attor-

---

[1] 18 U.S.C.A. §§ 398, 399 [now §§ 2421, 2422].

[2] It would appear that these three defendants by thus consenting to the trial judge's order waived their right to the public trial which the Sixth Amendment guarantees, since it is well settled that the right is one which can be waived. Patton v. United States, 1930, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.

R. 263; People v. Swafford, 1884, 65 Cal. 223, 3 P. 809; Benedict v. People, 1896, 23 Colo. 126, 46 P. 637; State v. Hensley, 1906, 75 Ohio St. 255, 79 N.E. 462, 9 L. R.A.,N.S., 277, 116 Am.St.Rep. 734, 9 Ann.Cas. 108; Dutton v. State, 1914, 123 Md. 373, 91 A. 417, Ann.Cas.1916C, 89; State v. Keeler, 1916, 52 Mont. 205, 156 P. 1080, L.R.A.1916E, 472, Ann.Cas. 1917E, 619; Keddington v. State, 1918,

ney: "We have a perfect right to clear the Courtroom?" and was answered: "Yes sir, that is the normal manner."

Thereupon the trial judge, mentioning the crowded condition of the room and the presence of young girls, said: "This Court * * * feels that the nature of this case is such that the Courtroom should be cleared and directs that the Courtroom be cleared of all people except the defendants, their counsel, witnesses and members of the press. The Court officer is directed to clear the Courtroom of all other persons notwithstanding one of counsel objects." Shortly thereafter the trial judge added: "May I inquire of counsel for the defendants if there are any persons who have been excluded from the room who have any connection with this case that you, counsel for the defendants, desire to be returned to the room? If so, if the request will be made—Court hears none at present. If there is any such request we will see that it is complied with immediately." While counsel at our bar were not in agreement with respect to what later transpired the record reveals nothing from which it might fairly be inferred that the order to clear the courtroom of the general public was later modified or rescinded.

The appellant asserts that the action of the trial judge deprived her of her constitutional right to a public trial. At the outset we note that it is not necessary for the appellant to show that she was in fact prejudiced by the action of the trial judge. If that action violated her constitutional right we agree with the Courts of Appeals of the Eighth and Ninth Circuits that a "violation of the constitutional right necessarily implies prejudice, and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to

point to any definite, personal injury. To require him to do so would impair or destroy the safeguard."[3] We proceed, then, to consider the nature and extent of the right to a public trial which the Sixth Amendment guaranteed to the defendant.

As the Supreme Court has pointed out,[4] the traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French Monarchy's abuse of the lettre de cachet, all of which institutions symbolized a menace to liberty and each of which had become instruments for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial.[5] But whatever its origin, at the time of the adoption of the Sixth Amendment the common law concept of a public trial had come to be regarded as an essential guarantee against any attempt to employ the courts as instruments of persecution. The knowledge that every criminal trial was subject to contemporaneous review in the forum of public opinion was regarded as an effective restraint on possible abuse of judicial power.[6] It was also thought that if trials were public they might come to the attention of important witnesses unknown to the parties who might voluntarily come forward to testify,[7] and that the conduct of trials in public would enable the spectators to learn about their government and acquire confidence in their judicial remedies.[8]

The right to a public trial in a criminal case which is guaranteed by the Sixth Amendment has received universal recognition in this country, the right having been similarly guaranteed by the constitutions of nearly all the states. In de-

19 Ariz. 457, 172 P. 273, L.R.A.1918D, 1093; People v. Harris, 1922, 302 Ill. 590, 135 N.E. 75; State v. Smith, 1936, 90 Utah 482, 62 P.2d 1110.

[3] Davis v. United States, 8 Cir., 1917, 247 F. 394, 398, 399, L.R.A.1918C, 1164, Tanksley v. United States, 9 Cir., 1944, 145 F.2d 58, 59, 156 A.L.R. 257.

[4] In re Oliver, 1948, 333 U.S. 257, 268–270, 68 S.Ct. 499.

[5] See also Radin, The Right to a Public Trial, 6 Temp.L.Q. 381.

[6] In re Oliver, 1948, 333 U.S. 257, 270, 68 S.Ct. 499.

[7] 6 Wigmore on Evidence, 3d Ed., § 1834; Tanksley v. United States, 9 Cir., 1944, 145 F.2d 58, 59, 156 A.L.R. 257.

[8] 6 Wigmore on Evidence, 3d Ed., § 1834; Bentham, Rationale of Judicial Evidence, Bowring's ed., vol. VI, pp. 355, 356 (1843).

termining the extent of the right, however, the courts are not in complete agreement.[9] All of them do concede that the right to have the members of the public present is subject to some limitations. There is general agreement that spectators having no immediate concern with the trial need not be admitted in such numbers as to overcrowd the courtroom and take up room needed for those who do have special concern with the trial such as the court officers, jurors and witnesses, and the relatives and friends of the defendant.[10] Moreover those spectators who are admitted must observe proper decorum and if their conduct tends in any way to interfere with the administration of justice in the courtroom they may, of course, be removed.[11] Likewise there is agreement that in cases involving sexual offenses youthful spectators may be excluded when the evidence is likely to involve the recital of scandalous or indecent matters which would have a demoralizing effect upon their immature minds.[12] So far the courts are in accord.

Some state courts, however, have taken the further position that in cases involving sexual offenses it is permissible and not in violation of the guarantee of a public trial to exclude the general public entirely from the courtroom, permitting, in addition to the court officers and jurors, only the parties involved in the trial, their counsel, witnesses, relatives and friends to be present. Sometimes the court's order has permitted newspaper reporters to be present, but in a number of cases the court has excluded all members of the public who are merely spectators without any special connection with the trial and has done so without any determination that those thus excluded ought not by reason of their immaturity to hear the prospective evidence.[13] This is substantially what the trial judge did in the case now before us.

The narrow question which we have to decide, therefore, is whether the Sixth Amendment permitted such a general exclusion of all the members of the public from the trial of the defendant or whether, on the contrary, the trial judge's power of exclusion was limited to those members of the public for whom space was not available in the courtroom or whose conduct was such as to interfere with the administration of justice or who ought not in the interest of public morals to have been permitted to hear the testimony which was likely to be given. In other words, did the trial judge have power to exclude all members of the public except those having special concern with the trial or should his order of exclusion have been limited to those persons or classes of persons who should not for proper and specific reasons have been permitted to attend, leaving the courtroom door open for all other members of the public who desired to attend and for whom there were seats available in the courtroom?

After mature consideration we have reached the conclusion, in accord with the present views of the two United States

---

[9] See cases collected in the note to Tanksley v. United States, 156 A.L.R. 257, 265.

[10] Myers v. State, 1895, 97 Ga. 76, 25 S.E. 252; Kugadt v. State, 1898, 38 Tex. Cr.R. 681, 44 S.W. 989; Davis v. United States, 8 Cir., 1917, 247 F. 394, L.R.A. 1918C, 1164; State v. Saale, 1925, 308 Mo. 573, 274 S.W. 393; People v. Greeson, 1925, 230 Mich. 124, 203 N.W. 141; People v. Miller, 1931, 257 N.Y. 54, 177 N.E. 306; Tate v. Commonwealth, 1935, 258 Ky. 685, 80 S.W.2d 817; In re Oliver, 1948, 333 U.S. 257, 271-272, 68 S.Ct. 499.

[11] United States v. Buck, D.C.E.D.Pa. 1860, Fed.Cas.No.14,680; Grimmett v. State, 1886, 22 Tex.App. 36, 2 S.W. 631, 58 Am.Rep. 630; Lide v. State, 1902, 133 Ala. 43, 31 So. 953; Wendling v. Commonwealth, 1911, 143 Ky. 587, 137 S.W.

205; Davis v. United States, 8 Cir., 1917, 247 F. 394, L.R.A.1918C, 1164; Bishop v. State, 1923, 19 Ala.App. 326, 97 So. 169; State v. Genese, 1925, 102 N.J.L. 134, 130 A. 642; People v. Greeson, 1925, 230 Mich. 124, 203 N.W. 141; State v. Scruggs, 1928, 165 La. 842, 116 So. 206; People v. Buck, 1941, 46 Cal.App.2d 558, 116 P.2d 160.

[12] Tilton v. State, 1908, 5 Ga.App. 59, 62 S.E. 651; State v. Adams, 1915, 100 S.C. 43, 84 S.E. 368.

[13] People v. Swafford, 1884, 65 Cal. 223, 3 P. 809; People v. Kerrigan, 1887, 73 Cal. 222, 14 P. 849; Benedict v. People, 1896, 23 Colo. 126, 46 P. 637; People v. Hall, 1900, 51 App.Div. 57, 64 N.Y.S. 433; Robertson v. State, 1912, 64 Fla. 437, 60 So. 118; State v. Johnson, 1914, 26 Idaho 609, 144 P. 784.

Courts of Appeals which have passed upon the precise question,[14] that the Sixth Amendment precludes the general indiscriminate exclusion of the public from the trial of a criminal case in a federal court over the objection of the defendant and limits the trial judge to the exclusion of those persons or classes of persons only whose particular exclusion is justified by lack of space or for reasons particularly applicable to them. Moreover whatever may have been the view in an earlier and more formally modest age, we think that the franker and more realistic attitude of the present day toward matters of sex precludes a determination that all members of the public, the mature and experienced as well as the immature and impressionable, may reasonably be excluded from the trial of a sexual offense upon the ground of public morals. In reaching our conclusion we are, of course, not passing upon the different situation which arises in a case, such as a prosecution for statutory rape, in which the prosecuting witness is of such tender years as to be seriously embarrassed in giving her testimony by the presence of spectators not concerned with the trial. It has been held that in such a case the trial judge in order to prevent a miscarriage of justice may during the witness' testimony exclude all members of the public not directly concerned with the trial.[15]

It may be conceded that the concept of a public trial as involving the requirement that some, but not all, of the members of the general public, must be permitted to attend is not wholly logical. Thus it has been suggested that if the members of the public are entitled to be present the right should be accorded to all who desire to attend and not merely to those who by coming early are able to gain admission to the limited number of seats available.[16] The courts, however, have denied that the constitutional right to a public trial involves the necessity of holding the trial in a place large enough to accommodate all those who desire to attend.[17] Also it has been suggested that the end of publicity sought to be achieved will be accomplished by permitting newspaper reporters to be present, as the trial judge in this case did, without the indiscriminate admission of members of the public who may come only out of idle curiosity.[18] It may well be that in most cases this would be sufficient to insure that acts of judicial misconduct would receive public attention. The law, however, is chary of putting all its eggs in one basket. The apparently idle spectator may turn out to be the one person who directs public attention to acts of judicial oppression which are overlooked by the more seasoned but sometimes blasé professional gatherer of news. Moreover, as has been suggested by Professor Wigmore,[19] it is entirely possible that the apparently idle spectator may prove to be the unknown witness vital to the defense of the accused.

We are satisfied that the framers of the Sixth Amendment believed it to be essential to the preservation of the liberty

[14] Davis v. United States, 8 Cir., 1917, 247 F. 394, L.R.A.1918C, 1164; Tanksley v. United States, 9 Cir., 1944, 145 F.2d 58, 156 A.L.R. 257; Compare the prior decisions of the latter court in Reagan v. United States, 9 Cir., 1913, 202 F. 488, 44 L.R.A.,N.S., 583, and Callahan v. United States, 9 Cir., 1917, 240 F. 683.

[15] Grimmett v. State, 1886, 22 Tex.App. 36, 2 S.W. 631, 58 Am.Rep. 630; State v. Callahan, 1907, 100 Minn. 63, 110 N.W. 342; Keddington v. State, 1918, 19 Ariz. 457, 172 P. 273, L.R.A.1918D, 1093; Moore v. State, 1921, 151 Ga. 648, 108 S.E. 47; State v. Damm, 1933, 62 S.D. 123, 252 N.W. 7, 104 A.L.R. 430; Hogan v. State, 1935, 191 Ark. 437, 86 S.W.2d 931; Beauchamp v. Cahill, 1944, 297 Ky. 505, 180 S.W.2d 423.

[16] See Radin, The Right to a Public Trial, 6 Temp.L.Q. 381, 391, 392.

[17] Myers v. State, 1895, 97 Ga. 76, 25 S.E. 252, 260; State v. Brooks, 1887, 92 Mo. 542, 5 S.W. 257, 264, 330; State v. Hensley, 1906, 75 Ohio St. 255, 79 N.E. 462, 463, 9 L.R.A.,N.S., 277, 116 Am.St. Rep. 734, 9 Ann.Cas. 108; People v. Greeson, 1925, 230 Mich. 124, 203 N.W. 141, 149; State v. Saale, 1925, 308 Mo. 573, 274 S.W. 393, 396; State v. Beckstead, 1939, 96 Utah 528, 88 P.2d 461, 464.

[18] Keddington v. State, 1918, 19 Ariz. 457, 172 P. 273, 274, L.R.A.1918D, 1093; See dissent, State v. Keeler, 1916, 52 Mont. 205, 156 P. 1080, 1084, 1085, L.R.A.1916E, 472 Ann.Cas.1917E, 619.

[19] 6 Wigmore on Evidence, 3d Ed. § 1834, p. 333.

·of the individual that, to the extent and within the limits which we have indicated, members of the general public should be admitted to every criminal trial even though it might appear that, in a case such as the one before us, most of them come only out of morbid curiosity. This concept of the common law which the framers believed important to be preserved as a protection for the individual and a restraint upon the possible abuse of judicial power was well expressed by Justice Bayley for the Court of Kings Bench in the case of Daubney v. Cooper, 1829, 10 B. & C. 237, 240, 109 Eng. Re. 438, 440, as follows: "* * * we are all of opinion, that it is one of the essential qualities of a Court of Justice that its proceedings should be public, and that all parties who may be desirous of hearing what is going on, if there be room in the place for that purpose,—provided they do not interrupt the proceedings, and provided there is no specific reason why they should be removed,—have a right to be present for the purpose of hearing what is going on."

While, as has been suggested, the right thus accorded to members of the public to be present at a criminal trial as mere spectators may not be wholly logical it has been imbedded in our Constitution as an important safeguard not only to the accused but to the public generally. Having evolved as a basic right which has withstood the test of the centuries it hardly needs at this late date the support of the logician. We are in duty bound to preserve the right as it has been handed down to us and this we will do only if we make sure that it is enforced in every criminal case, even in such a sordid case as the one now before us.

In the present case it is apparent that the trial judge's action was intended to protect the morals of the large group of youthful spectators who were in the courtroom. This was highly laudable and if his order of exclusion had been limited to this group it would have been quite proper. But in making his order applicable to the public generally he passed the bounds laid down by the Sixth Amendment and thus denied the defendant the public trial to which she was entitled. This was not cured by his subsequent offer to re-admit such persons as the defendant might request since the offer was limited to persons whom the defendant might designate and who were connected with the case.

The judgment of the district court will be reversed and the cause will be remanded for a new trial.