THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. DANIEL GENESE, PLAINTIFF IN ERROR.

Argued June 18, 1925—Decided October 19, 1925.

1. Evidence considered and held that the verdict of murder in the first degree is not against the weight of the evidence.

2. Whether or not the prosecutor of the pleas should be permitted to cross-examine the brother-in-law of the defendant, a witness called by the state, is a question resting within the sound discretion of the trial judge, and it is not erroneous to overrule an objection "to the prosecutor's attempting to cross-examine his own witness" when his testimony was asserted to be, and was regarded by the judge, as a surprise to the prosecutor.

3. The overruling of an objection made by the defendant that "we object to the reading of anything from this affidavit unless we are granted the privilege of examining the witness as to the circumstances surrounding the obtaining of this affidavit, whether it was a voluntary statement," if erroneous, was not prejudicial to the defendant and will not result in a reversal, since it

appears that later, during the same examination of the witness, the defendant was permitted to examine him as to the circumstances surrounding the making of the statement, and he said, in effect, that it was voluntarily made.

4. Before a confession made by a prisoner charged with crime, to an officer in whose custody he is upon that charge, can be received in evidence, it must be shown that the confession was voluntary. A voluntary confession is one not extorted by any sort of threats or violence, or obtained by any direct or indirect promise. This preliminary examination is for the court, and comprises a mixed question of law and of fact.

5. The admission in evidence of a confession as voluntary is not reviewable by an ordinary writ of error resting alone upon a bill of exceptions, if there is legal evidence to support the finding. Where, however, the entire record also is brought up for review the appellate court will consider a proper specification of cause for reversal that the defendant has suffered manifest wrong or injury in the admission of the confession. But to justify a reversal upon that ground it must appear that the evidence, though pertinent to support such finding, is insufficient in weight to justify the finding, and that wrong or injury has been done to the defendant by the admission of the confession.

6. The question being whether a prisoner's confession was voluntary, evidence of violence alleged to have been administered to another prisoner after the defendant's confession was made, and as to his subsequent physical condition, is properly overruled.

7. Upon the trial of an indictment for the murder of a member of the state police while arresting the defendant whom he had reason to suspect was attempting to commit a robbery, it was not erroneous for the state to show that two days before the attempted robbery the defendant questioned a witness about the functioning of the state police and town police in the vicinity of the attempted robbery.

8. The trial court may, in its discretion, admit in rebuttal evidence which more properly should have been introduced in chief, and the exercise of this discretion will not result in a reversal except in a case of abuse.

9. The constitution of New Jersey provides that in all criminal prosecutions the accused shall have the right to a speedy and public trial. But the publicity of the proceedings should be subordinated to the orderly and proper manner in which they are to be conducted; and where the defendant is not prejudiced, nor deprived of the presence, aid or counsel of any person whose presence might be of advantage to him, it is within the discretion of the court to exclude a part of the audience from the court room where it deems it necessary so to do in order to secure the administration of justice and to facilitate the orderly and proper conduct of the trial.

10. A person may be arrested by a peace officer acting in good faith without a warrant, who has created facts and circumstances giving the officer reasonable cause to suspect him of being guilty of an attempt to commit a robbery; and killing the officer in

resisting such arrest or in attempting to escape therefrom is murder.

11. A comment upon evidence in a charge to the jury is proper so long as the comment is justified by the evidence.

12. Where requests to charge, so far as they are proper, are charged in substance, the refusal to charge them as drafted is not erroneous.

On error to the Somerset Oyer and Terminer Court.

For the plaintiff in error, *Frederick Pope* (*Edward M. Salley,* on the brief).

For the defendant in error, *Azariah M. Beekman* and *James I. Bowers,* prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J.  The plaintiff in error, Daniel Genese, was indicted in the Court of Oyer and Terminer of Somerset county for the murder of Robert Coyle, a member of the state police force, in that county.  He was convicted of murder in the first degree, and no recommendation of life imprisonment being made by the jury, he was sentenced to death.  He now brings up for review that judgment both by bill of exceptions and by specifications of causes for reversal under section 136 of our Criminal Procedure act.

At the trial the evidence tended to show, among others, the following matters of fact:

In the fall of the year 1924 the defendant conceived a design to rob the pay roll man of the Bound Brook Crushed Stone Company.  He spent several days investigating the habits and route of the pay roll man.  He undertook to carry out that design on December 18th, 1924, the day of the tragedy, which was the company's pay day.  In the early morning of that day, accompanied by his companion, Anderson, he left Jersey City in his *red* Buick touring car.  At Plainfield he exchanged that car for a *blue* one which he had left there, and proceeded to the public road leading from Bound Brook to Chimney Rock, where he remained from nine-thirty A. M. to three-thiry P. M., at times secreting him-

self and his car in a lane, at other times patrolling the road on foot. At three-thirty P. M. the sperintendent of the company, riding this public road alone in the paymaster's car, was forced to stop by the defendant and Anderson, who were disguised as officers, and was required to disclose the contents of his car. They failed to find the money because the superintendent did not have it, and the car was allowed to go. The defendant then drove his *blue* car to Plainfield, changed to his *red* car, and returnd to the scene of the tragedy. Meanwhile, this attempted robbery being reported, and the otherwise suspicious conduct of the defendant having been seen, the pay roll money was sent by another route in the state police car, escorted by state troopers Gregovesir and Coyle (the decedent) who had been sent for. Upon his return to the scene of the attempted robbery the defendant began again to patrol the road armed with a revolver (filled partly with blank and partly with loaded cartridges), leaving his car secreted back in a lane with Anderson at the wheel. Meanwhile, troopers Gregovesir and Coyle had observed the suspicious conduct of the defendant and his car, and had been informed of the attempted robbery. About five P. M. they drove in their car down the road, and overtook the defendant watching by the roadside, and placed him under arrest; but, in searching him, they failed to find his revolver which he had secreted under his clothing. They put him on the rear seat of their five-passenger soft-top Buick touring car with their police dog, and started the car, Gregovesir driving in the left-hand front seat and Coyle sitting beside him. As the car started the defendant drew his revolver and cried "stick 'em up," whereupon Coyle drew his revolver and turned, and both men fired simultaneously. The defendant's revolver appears to have been set upon a blank cartridge, but the explosion near Coyle's face blinded and burned him, and Coyle dropped his own revolver.

Thus far there is no substantial dispute in the testimony. The state maintained, and the evidence tended to show, that upon the defendant's saying "stick 'em up" Gregovesir drew his revolver, turned and tried to fire, but his revolver was grasped by the defendant and wrested from his hand; that

using that revolver the defendant immediately shot Coyle twice and killed him, both bullets entering the rear part of the left armpit and passing through the heart; that Gregovesir, being disarmed, jumped out of the left side of the car, by way of the front door, into a ditch, and ran for help; that thereafter defendant got out of the car by the rear left-hand door; that when Gregovesir returned shortly thereafter he found Coyle dead on the front seat and the defendant gone. The defendant testified that he got out of the car by the right-hand rear door as Gregovesir jumped out on the left; that Gregovesir then opened the rear door on the left and fired two shots at the defendant as the latter was "ducking down behind the driver;" that then, Gregovesir ran away and defendant dropped his own gun and picked up both guns belonging to the troopers, and made off in his automobile to Jersey City, carrying the troopers' revolvers with him, and so disposed of them that they could not be produced at the trial.

The defendant contended at the trial, and now contends, that he did not fire the shots that killed Coyle, but that they were fired by trooper Gregovesir. That question the trial judge submitted to the jury, and it was found against the defendant, and we think rightly. The defendant now argues in this connection that the verdict is against the weight of the evidence. We think it was not. On the contrary, the evidence referred to, when considered in connection with the other evidence, notably that of a passerby, whose testimony supported the state's contention as to the conduct of the men as they left the automobile, satisfies us that the state's contention was true and the verdict right.

We shall notice the remaining points made by defendant in the order in which they have been argued.

It is first argued that the trial judge erred in overruling objections made by the defendant to the examination of the brother-in-law of the defendant, a witness called by the state.

The prosecutor of the pleas stated that the testimony of the witness at the trial was a surprise to him, and he wished to call his attention to contradictory statements made by him in an affidavit before the trial.

To this counsel for the defendant said, "We object to the prosecutor's attempting to cross-examine his own witness."

Now, whether or not the prosecutor of the pleas should be permitted to cross-examine the brother-in-law of the defendant, a witness called by the state, was a question resting within the sound discretion of the judge, and we think there was no error in overruling the objection "to the prosecutor's atempting to cross-examine his own witness" when, as here, his testimony was asserted to be, and was regarded by the trial judge, as a surprise to the prosecutor.

Then, this further objection was made: "We object to the reading of anything from this affidavit unless we are granted the privilege of examining the witness as to the circumstances surrounding the obtaining of this affidavit, whether it was a voluntary statement."

We have not stopped to examine the merit of this objection, and for this reason: The action of the judge in overruling the objection, if erroneous, cannot lead to a reversal, because it was not prejudicial to the defendant, since it appears that later, during the same examination of the witness, the defendant was permitted to examine him as to the circumstances surrounding the making of the statement, and he said, in effect, that it was voluntarily made.

The next point is that the admission of the confession signed by Genese (the defendant), upon his arrest, was illegal.

Of course, before a confession made (as here) by a prisoner charged with crime, to an officer in whose custody he is upon that charge, can be received in evidence, it must be shown that the confession was voluntary. A voluntary confession is one not extorted by any sort of threats or violence, or obtained by any direct or indirect promise. *Roesel* v. *State, 62 N. J. L.* 216; *State* v. *Murphy, 87 Id.* 515. This preliminary examination is for the trial court, and comprises a mixed question of law and fact. *Roesel* v. *State, supra; State* v. *Hernia, 68 Id.* 299; *State* v. *Monich, 74 Id.* 522. This examination the court conducted, and at its conclusion admitted the confession in evidence.

The admission in evidence of a confession as voluntary is not reviewable on an ordinary writ of error resting alone upon a bill of exceptions if, as here, there is legal evidence to support the finding. Where, however, as in the present case, the entire record also is brought up for review, the appellate court will consider a proper specification of cause for reversal that the defendant has suffered manifest wrong or injury in the admission of the confession. But to justify a reversal upon that ground it must appear that the evidence, though pertinent to support such finding, is insufficient in weight to justify the finding, and that wrong or injury has been done to the defendant by the admission of the confession. *State* v. *Young,* 67 *N. J. L.* 223; *State* v. *Morehous,* 97 *Id.* 285.

Turning now to the causes for reversal we have difficulty in finding any proper specification that the defendant suffered manifest wrong or injury in the admission of the confession. But, in view of the gravity of the case, we assume that there is such a specification, and have, accordingly, examined the evidence with care.

The statement was first made by the defendant orally on Friday night, February 6th, 1925, at the state troopers' headquarters at Pluckamin, to a stenographer. It was transcribed, and the following afternoon (Saturday, February 7th,, between four and five P. M.) it was read and signed by him on every page, and sworn to before a justice of the peace in the presence of several officers and troopers of the state police, who all testified that no threats or promises were made. The sole contention of the defendant was that the confession was extorted from him by threats and violence upon the part of the troopers, not at the time it was signed, but on Friday night when it was given orally. The defendant testified to that effect, but there was very slight, if any, corroboration of his story. On the other hand, the numerous witnesses present at the time of the oral confession all denied emphatically that there was any violence or threats. Our conclusion, therefore, is that the evidence was amply sufficient in weight to justify the finding that the confession was voluntary, and that it was properly admitted.

In connection with this point complaint is made that the trial judge struck out evidence of violence administered to Anderson (defendant's companion on the day of the tragedy) by a detective when he was brought to the troopers' headquarters, and excluded evidence as to Anderson's subsequent physical condition. This was not erroneous, since it appeared that it related to alleged occurrences after the defendant's confession was made, and had no probative force upon the question of the voluntary character of the confession for which purpose alone the evidence was offered.

The next point is that the court improperly admitted the testimony of one Greenburg, a taxi driver, that two days before the shooting occurred the defendant, Genese, and his partner, Anderson, employed him at the Bound Brook station to drive into Plainfield, and, on the way, Genese started a conversation concerning the state police and town police, and asked several questions concerning them. This testimony, we think, was proper. The fact that two days before the attempted robbery the defendant questioned the witness about the functioning of the state police and the town police in the vicinity of the attempted robbery was competent and material on the trial of the indictment for the murder of a member of the state police while arresting the defendant, whom he had reasonable cause to suspect was attempting to commit a robbery.

The next point is that the court improperly admitted the testimony of one Foster, an expert on the results of pistol shooting. This witness was called after the defendant had rested, and the only objection to the testimony was, "it is not rebuttal; it is the state's direct case."

We incline to think that this objection was ill-founded in point of fact. But, however that may be, the rule is that the court may, in its discretion, admit in rebuttal evidence which more properly should have been introduced in chief, and the exercise of this discretion will not result in a reversal except in a case of abuse. We think the discretion was not abused.

The next point is that the court violated the constitutional right of the defendant to a public trial by excluding a part

of the audience from the court room during the progress of the trial.

Our state constitution provides that "in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury." Article 1, section 8. But the publicity of the proceedings should be subordinated to the orderly and proper manner in which they are to be conducted; and where the defendant is not prejudiced, nor deprived of the presence, aid or counsel of any person whose presence might be of advantage to him, it is within the discretion of the court to exclude a part of the audience from the court room where it deems it necessary so to do in order to secure the administration of justice and to facilitate the orderly and proper conduct of the trial.

Tested by these principles the action of the trial judge was right. The record discloses that a part of the audience, after having been warned to keep quiet, persisted in interrupting orderly proceedings by laughter. That justified the action which it is not even pretended prejudiced the defendant in maintaining his defense.

The next contention (rested upon the charge of the court and refusal to charge) is that the arrest of the defendant by officers Coyle and Gregovesir "was illegal, having been made without a warrant," and that therefore the offense was not murder, but at most, manslaughter.

We think that there is no merit in this contention. The trial judge submitted the question of the legality of the arrest to the jury, and of that action the defendant cannot complain in view of the evidence. At the trial the defendant admitted an attempt at robbery about an hour before his arrest and at the scene thereof, which robbery failed because the victim did not have the money on his person which the defendant intended to take from him. The evidence tended to show that at the time of his arrest he was still pursuing his attempt to commit the robbery which had failed. The robbery (a felony at common law), if accomplished, would have been a high misdemeanor, and made punishable by our statute as such. Section 120 of our Crimes act, Comp. Stat., p. 1785. By section 216 of that act any person who shall

attempt to commit any of the offenses mentioned in the act, though such offense be not actually committed, is guilty of a misdemeanor. This was the law at the time of the decision by this court of *Brown* v. *State,* 62 *N. J. L.* 666. In that case Brown was indicted for the murder of one Gebhardt, a police officer of Hoboken. Gebhardt observed Brown entering the vestibule of a flat-house and closing the door after him. It was afterwards discovered that Brown had with him burglars' tools. He did not get into the house. The officer entered the vestibule, placed him under arrest, and brought him out to the street, where, in an effort to escape, he killed the officer. He, apparently, was guilty of the intention of entering this house for the purpose of stealing whatever he could find. If he had succeeded in accomplishing his purpose he would have been guilty of a high misdemeanor, under section 133 of the Crimes act, which was in force at the time the killing in the Brown case occurred. In that case Mr. Justice Depue said: "His (the prisoner's) conduct in going into the flat was suspicious, and the officer, if he had no knowledge of the antecedents of the accused, had no knowledge of his (the prisoner's) purpose in going there, and, if acting on his own view of the conduct of the prisoner, he had reasonable grounds to suspect the prisoner's object in going into the vestibule and pulling the door beind him was to commit a criminal offense, *he had a right, and it was his duty, to arrest him without process;* and the trial judge submitted that question as a question of fact for the jury."

In the present case, the attempt at robbery an hour before at the same place, the defendant's suspicious conduct in the neighborhood during the day and down to the time of his arrest, of which Coyle had knowledge, gave the latter reasonable cause to suspect the prisoner was attemping to commit robbery, as the jury might and did find. The arrest was therefore legal, since the rule is that a person may be arrested by a peace officer acting in good faith without a warrant, who has created facts and circumstances giving the officer reasonable cause to suspect him of being guilty of an attempt to commit a robbery; and killing the officer in resisting such arrest or in attempting to escape therefrom is murder. *Brown* v. *State, supra.*

The next point is that the court erred in charging the jury as to the essential elements of murder of the first degree. The instruction complained of so far as it dealt with legal propositions was entirely accurate.    The rest of it was a mere comment on evidence, which we have frequently held is proper, so long as the comment is justified by the evidence, as it was in this case.

Other points relate to refusals to charge certain requests submittted.    Our examination of the charge leads us to the conclusion that these requests, so far as they were proper, were each of them charged in substance, and, hence, the refusal to charge them as drafted was not erroneous.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, MIN-TURN, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, JJ.    11.

*For reversal*—None.