STATE of Iowa, Appellee,

v.

Richard Paul LAWRENCE, Appellant.

No. 52826.

Supreme Court of Iowa.

May 6, 1969.

Nelson & Fassler, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and William G. Faches, County Atty., Cedar Rapids, for appellee.

LARSON, Justice.

The defendant, Richard Paul Lawrence, was indicted by a grand jury for the crime of murder in violation of section 690.1, Code of 1966, committed in Linn County, Iowa, on or about December 20, 1966. Subsequent to a plea of not guilty, a trial by jury was had commencing on June 5, 1967. On June 13 the jury found defendant guilty of murder in the second degree. Pursuant to hearing on defendant's motion for new trial on June 20, which was overruled, the court on June 22 entered its judgment sentencing defendant to the Iowa State Penitentiary at Fort Madison, Iowa, for a term of 90 years. Notice of appeal was timely filed on August 14, 1967.

Since the vital question presented by this appeal does not concern the facts and circumstances surrounding the crime, they will be omitted in the interest of brevity. In his assignment of error the defendant contends the trial court erred (1) in excluding the public from the courtroom during the reading of the instructions to the jury, in violation of his right to a public trial, (2) in authorizing the county attorney to subpoena defendant's witnesses after indictment, the effect of which was to allow discovery techniques not in accordance with the law in this jurisdiction, and (3) in abusing its discretion in sentencing defendant.

The record discloses that, through mistake or misunderstanding, the public, including the press, was excluded from the courtroom during the reading of the instructions to the jury. Therefrom we learn that during a recess, when everyone had left the courtroom, the judge instructed the bailiff to see to it that no spectators entered the courtroom during the reading of the instructions to the jury prior to their retiring to deliberate. The bailiff carried out his orders to the extent that no member of the general public was inside the courtroom during that time, although several persons attempted to enter. Defendant's position, then as now, was that the exclusion required a new trial and that it was not necessary for him to show in what manner, if any, he was prejudiced by the exclusion of the public during that time.

I. Of uncertain origin, but nevertheless deeply rooted in the common law, the right to public trial has long been regarded as a fundamental right of the defendant in a criminal prosecution. See 1 Bentham, Rationale of Judicial Evidence (1827), Book II, ch. X; 2 Bishop, New Criminal Procedure, 2d ed. (1913), p. 767; 3 Blackstone's Comm., Lewis ed. (1897), pp. 372–373; 2 Hale, History of the Common Law of England, 5th ed. (1794), pp. 141–142; 2 Coke's Institutes (1797), pp. 103–104; Radin, The Right to a Public Trial, 6 Temple L.Q. 381.

This common law concept, whether guaranteed by constitutional or statutory provision, is universally regarded by state and federal courts as basic and substantial, and the language declaring it as mandatory. State v. Schmit, 273 Minn. 78, 139 N.W.2d 800, 803. Accordingly, it is protected by constitution, statute, or decision in almost every state. Amendment 6, United States Constitution; Article I, Section 10, Iowa Constitution. As to this application, see Matter of Oliver, 333 U.S. 257, 267, 68 S. Ct. 499, 504, 92 L.Ed. 682, 691.

Although this exact question has not been presented in this state, we have recognized that the right to public trial is guaranteed by Article I, Section 10, of the

Iowa constitution, which provides in part: "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and *public trial* * * *." (Emphasis added.) See State v. Worthen, 124 Iowa 408, 410, 100 N.W. 330, 331.

A number of reasons have been ascribed to the privilege of public trial, but perhaps foremost is providing the accused greater security in the administration of justice. In contrast to Star Chamber techniques, which are alien in a free society, publicity serves as a buttress against unjust prosecution and aids greatly in insuring the accused the fair trial to which he is entitled. See 1 Bentham, supra, pp. 523–524; 1 Cooley, Constitutional Limitations, 8th ed. (1927), p. 647; State v. Worthen, supra. "The knowledge that every criminal trial is subject to contemporaneous review in the form of public opinion is an effective restraint on possible abuse of judicial power." Matter of Oliver, supra, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682, 692. "Secrecy, where events of public importance are involved, always suggests suppression, and suppression, in its own turn, generates rumors; and rumors, which are planted in the soil of suspicion eventually send forth the ugly plant of perverted truth." In re Mack, 386 Pa. 251, 277, 126 A.2d 679, 691–692. "In publicity of the procedure and the trials lie the true safeguards of individual liberty." 24 Locre 21, quoted in Esmein, A History of Continental Criminal Procedure, 483–484.

Publicity has also been deemed to play an important role in assuring testimonial trustworthiness by inducing fear of exposure of testimony falsely given. 6 Wigmore on Evidence, 3d ed. (1940), section 1834; 1 Bentham, supra; 3 Blackstone, supra, p. 373. In addition, publicity brings notice of the proceedings to the attention of possible witnesses who might be unknown to the parties. See Tanksley v. United States (9th Cir.), 145 F.2d 58, 59, 156 A.L.R. 257, 10 Alaska 443; 6 Wigmore, supra. Publicity may also be said to discourage undue emphasis by the court when charging the jury. When instructing the jury as to the law applicable to a given case, overemphasis by repetition or voice inflection could, of course, materially affect jury consideration of the matter, and such undue emphasis would not be reflected by the printed copy of the instructions later available to the public.

■ II. The right to a public trial has never existed as a rigid, inflexible straight jacket upon the courts. It has generally been viewed as a right subject to the inherent power of the court to limit attendance as the conditions and circumstances reasonably require for the preservation of order and decorum in the courtroom, and to reasonably protect the rights of parties and witnesses. Annotation, 48 A.L.R.2d 1436, 1448; annotation, 4 L.Ed.2d 2128, 2144. Logically, it has been held restrictions on attendance may be imposed because of limited seating capacity in the courtroom. Davis v. United States (8th Cir.), 247 F. 394, 395, L.R.A. 1918C, 1164; People v. Jelke, 308 N.Y. 56, 123 N.E.2d 769, 48 A.L.R.2d 1425; Tate v. Commonwealth, 258 Ky. 685, 693, 80 S.W.2d 817, 821; Payne v. State, 226 Ark. 910, 295 S.W.2d 312. Likewise, to prevent overcrowding, see State v. Schmit, supra, 273 Minn. 78, 139 N.W.2d 800; Myers v. State, 97 Ga. 76, 98, 25 S.E. 252, 260; and to preserve health or sanitary conditions, see People v. Jelke, supra, 308 N.Y. 56, 63, 123 N.E.2d 769, 772, and citations, and People v. Miller, 257 N.Y. 54, 60, 177 N.E. 306, 308. See also Wendling v. Commonwealth, 143 Ky. 587, 601, 137 S.W. 205, 211; State v. Saale, 308 Mo. 573, 579–581, 274 S.W. 393, 395–396.

■ It is also of paramount importance that order and decorum be preserved in the courtroom. Thus, a judge may exclude anyone from the courtroom who does not conduct himself properly. United States ex rel Orlando v. Fay (2nd Cir.), 350 F.2d 967; Myers v. State, supra; United States v. Kobli (3d Cir.), 172 F.2d 919, 921, 924; State v. Copp, 15 N.H. 212, 214; State v.

Genese, 102 N.J.L. 134, 142, 130 A. 642, 646. It is also generally held that minors deserve special attention and may be excluded from the courtroom in trials of a salacious nature. State v. Schmit, supra; State v. Adams, 100 S.C. 43, 84 S.E. 368; People v. Byrnes, 84 Cal.App.2d 72, 190 P. 2d 290, 291. In other words, courts generally hold that *part* of the public may for good and sufficient reason be excluded from the courtroom during trial, but no more persons than are necessary to secure those proper objectives may be excluded. Davis v. United States, supra; United States v. Kobli, supra.

In State v. Worthen, supra, 124 Iowa 408, 100 N.W. 330, our court has also recognized the exclusion of a portion of the public for good cause. Therein the trial court ordered the exclusion of defendant's witnesses because it felt their exclusion would be more conducive to a fair and impartial trial. The defendant appealed alleging he was denied his right to a public trial. In finding no merit in this contention, our court held that a sequestration of defendant's witnesses did not infringe upon his constitutional right to a public trial.

■ In any event, spectators who conduct themselves properly may not be excluded from any major portion of a trial. Such an arbitrary exclusion would fail to meet our constitutional provision requiring a public trial.

■ III. All authorities agree that, in the absence of legitimate reasons for limiting public attendance in criminal trials, the concept of public trial includes the entire trial from the impaneling of the jury to the rendering of its verdict. Sirratt v. State, 240 Ark. 47, 398 S.W.2d 63 (1966); United States v. Sorrentino (3d Cir.), 175 F.2d 721, cert. denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551; People v. Teitelbaum, 163 Cal.App.2d 184, 329 P.2d 157 (1958), cert. denied and appeal dismissed 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed.2d 759; People v. Micalizzi, 223 Mich. 580, 194 N.W. 540; 21 Am.Jur.2d, Criminal Law, § 260. See also People v. Harris, 182 Misc. 787, 50 N.Y.2d 745, 763.

In Sirratt v. State, supra, defendant was charged with second degree murder. The trial commenced on January 18, 1965, and ended on January 20, 1965. Sometime in the afternoon on January 19 an altercation took place outside the courtroom. As a result, the court ordered the courtroom cleared of all spectators with the exception of those necessary to the trial. At the time of the exclusion 24 witnesses had already testified, and the exclusion only involved a part of defendant's cross-examination, final arguments, and instructions to the jury. In ordering a new trial the Supreme Court stated at page 67 of 398 S. W.2d: "The state says, 'The fact remains that most of the trial had been concluded before exclusion of spectators.' * * * As stated in 21 Am.Jur.2d 299, Section 260: 'The constitutional guaranty of public trial applies to the *entire trial* and may be violated by exclusion of the public from a part of the trial. *The trial, for this purpose, consists of the proceedings for impanelment of the jury, the opening statements of counsel, the presentation of evidence, the arguments, the instructions to the jury, and the return of the verdict.'* * * * we think reversible error was committed when the public was excluded on January 19." (Emphasis added.)

In United States v. Sorrentino, supra, the defendant was convicted of conspiracy to violate the Mann Act and he appealed alleging he did not receive a public trial. The facts revealed that the trial court had excluded the public only during the selection of the jury. The court, in holding this was reversible error unless defendant waived his right to public trial, stated at page 722 of 175 F.2d: "From the certificate and testimony it appears that the exclusionary order of the trial judge was relaxed on the last three days of the trial but that it was enforced on the first day during which the jury was selected. The Government argues that since the public was admitted on the three days during

**916**

which testimony was taken the defendant actually had a public trial within the meaning of the Sixth Amendment. The constitutional guarantee, however, *applies to the entire trial, including that portion devoted to the selection of the jury."* (Emphasis added.)

People v. Teitelbaum, supra, dealt with a prosecution for conspiracy to commit grand theft, attempted grand theft, and the filing of a false and fraudulent insurance claim. Defendant was convicted and appealed alleging inter alia he was not accorded his right to public trial. The basis of this contention was that the public was not allowed to hear some 34 conferences between the judge and counsel for the parties out of the hearing of the jury. In finding no merit in this contention, the court found that the public heard everything the jury did and the 34 conferences were on matters which could not have been properly heard in the presence of the jury. In holding the defendant was not denied his right to public trial, the court stated at page 172 of 329 P.2d: "The trial of the action, so far as the term 'public trial' is concerned, *consists in the proceedings for the impanelment of the jury, the opening statements of counsel, the presentation of evidence, the arguments, the instructions to the jury and the return of the verdict,* and from none of these proceedings was the public excluded." (Emphasis added.)

Finally, in People v. Micalizzi, supra, the court was also faced with the question of whether defendant had been denied his right to public trial. The facts reveal that before the court charged the jury, one of the court officers announced that those desiring to leave should do so as the doors of the courtroom were to be locked. Subsequent to this announcement they were locked and remained locked during the reading of the instructions to the jury. One of defendant's attorneys as well as members of the public sought admittance but were denied. There was no apparent reason for the exclusion, there were many available vacant seats, and except by infer-

ence it was not made to appear that this course was taken by order of the court. In holding that defendant was denied his right to public trial, the appellate court, commenting on the exclusion during only the charge to the jury, stated at page 542 of 194 N.W.: "If a portion of the trial may be conducted behind barred doors, it may all be conducted behind barred doors. If one constitutional right may be violated with impunity, all may be, and the Bill of Rights becomes but a scrap of paper. The defendant has not had the public trial guaranteed him by the Constitution."

A careful review of the record in the case at bar makes it readily apparent that no justifiable reason or reasons existed for the limitation or exclusion of the public during the reading of the instructions to the jury. The court itself so found. In explaining the exclusion the trial court said what it thought it told the bailiff was, "do not permit any spectators to leave the courtroom until after the jury had departed to go to the jury room," but apparently it was misunderstood by the bailiff, who was positive that his instructions were to exclude the public after the recess. This he did.

Of course, defendant's counsel did not object to the exclusion during the trial. It appears both counsel for the defendant and counsel for the State had their backs to the courtroom and were at the time unaware that the public was excluded. Objection by defendant was registered promptly upon being advised of this fact by the court, and his objection was timely.

We are satisfied the State failed to show any justifiable cause for this exclusion and must conclude that the public was improperly excluded during the reading of the instructions to the jury. Failure to admit the public at that time was error.

IV. It is contended by the State that, even if there was error in excluding the public during a portion of the trial, it was harmless error, and that *it was incumbent upon the defendant to show he was preju-*

diced or harmed thereby. We cannot agree.

The State relies heavily upon the case of Reagan v. United States (9th Cir.), 202 F. 488, 44 L.R.A.,N.S., 583, to sustain its position. A careful review of the cases in this area reveals that the Reagan case has not been followed on the issue of prejudice, but rather is repudiated by later cases including at least one case in that same circuit. See Tanksley v. United States (9th Cir.), supra, 145 F.2d 58, 59; Davis v. United States (8th Cir.), supra, 247 F. 394, 398; United States v. Kobli (3d Cir.), supra, 172 F.2d 919, 921.

■ The better-reasoned and presently-recognized rule by the overwhelming weight of authority is that a violation of defendant's constitutional right to a public trial necessarily implies prejudice and more than that need not appear. Davis v. United States, supra; Tanksley v. United States, supra; United States v. Kobli, supra; Sirratt v. State, supra, 398 S.W.2d 63, 67; State v. Schmit, supra, 139 N.W.2d 800, 807; State v. Haskins, 38 N.J.Super. 250, 256, 118 A.2d 707, 710, and cases cited therein; State v. Keeler, 52 Mont. 205, 214, 156 P. 1080, 1082, L.R.A.1916E, 472; People v. Byrnes, supra, 190 P.2d 290, 294; People v. Jelke, supra, 308 N.Y. 56, 67, 123 N.E.2d 769, 775; State v. Osborne, 54 Or. 289, 103 P. 62; People v. Hartman, 103 Cal. 242, 37 P. 153. See also annotation, 156 A.L.R. 296; annotation 48 A.L.R.2d 1436, 1454; annotation 4 L.Ed.2d 2128; 2136; Quick, "A Public Criminal Trial", 60 Dickinson L.Rev. 21; 49 Columbia L. Rev. 110; 41 N.Y.U.L.Rev. 1138.

In Davis v. United States, supra, near the conclusion of the trial which lasted several days, a night session of the court was held for final arguments. Prior to the final arguments the courtroom had become overcrowded and the trial judge ordered it cleared of all spectators because of the possibility of trouble, except relatives of the defendants, members of the bar, and newspaper reporters. A bailiff at the door

had been instructed to admit none but those of the excepted class. Others not in this class sought admission but were denied. There were about 75 vacant seats after the exclusion. On appeal the trial court was reversed on the basis that its exclusionary order violated defendants' right to a public trial. One of the contentions of the prosecution was that no affirmative showing of prejudice was made by the defendants. As to this the court stated at page 398 of 247 F.: "It is urged that no prejudice to defendants was shown. A violation of the constitutional right *necessarily implies prejudice* and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard." (Emphasis added.)

In State v. Schmit, supra, a sodomy case, after the jury was sworn and the State had concluded its opening statement, on the State's motion the trial judge excluded all witnesses and the general public, allowing only members of the bar, counsel for both sides, and the press, to remain because of the nature of the testimony. The appellate court, in holding that this exclusion violated defendant's right to a public trial, stated at page 807 of 139 N.W.2d: "It follows that a new trial must be granted even though defendant has not shown any specific prejudice. *A violation of fundamental rights implies prejudice.* To require an affirmative showing, often difficult if not impossible, would impair or destroy the right, and thereby render the constitutional guarantee illusory. [Citations]" (Emphasis added.)

In Sirratt v. State, supra, on the question of whether an affirmative showing of prejudice was required, the court stated at page 67 of 398 S.W.2d: "As set forth in 21 Am.Jur.2d 304, Section 269: 'When a defendant's right to public trial has been violated over his timely objection, it has generally been held that *he is not required to show that he suffered actual prejudice*

*as a result.* Some cases state that prejudice is presumed. Others say that when the constitutional right is violated, prejudice is conclusively presumed, or that such *a violation necessarily implies prejudice and more than that need not appear.*" (Emphasis added.)

State v. Haskins, supra, was a case involving charges of various sex offenses against the defendant. Before the trial began, because of the nature of the subject matter, the trial judge ordered the courtroom cleared of the general public. In holding this error the appellate court next dealt with the problem of prejudice and, concerning this problem, stated at page 710 of 118 A.2d: "But according to the State, the law requires the defendant to establish prejudice. We think not. If this were so, the guaranty of a public trial would be practically destroyed; for, as it has been said repeatedly, it would be difficult, if not impossible, for a defendant to make out prejudice. [Exhaustive citations.]"

Commenting upon whether it is necessary for a defendant claiming a denial of his right to public trial to affirmatively show prejudice, the following was said at page 1149 of 41 N.Y.U.L.Rev.: "A showing that an accused has been denied a public trial and that there has been no waiver of this right is generally sufficient to reverse his conviction. * * * it is the duty of the state to provide a trial at which certain minimal standards are respected and it should not relieve itself of this obligation by requiring the accused to show how he was harmed by its misconduct. Moreover, if actual prejudice were required, the public trial guaranty might become illusory for many defendants, since in most cases 'it should be difficult, if not impossible * * * to point to any definite, personal injury.' [Citing cases.] The protections accorded to the accused by a public trial are intangible and not easily measurable. A similar problem arises in right to counsel cases, where it is difficult for an appellate court to determine retrospectively what benefits might have been secured by the presence of counsel. [Citing authority.] In both situations, a showing that the proceeding was one in which the defendant was entitled to his constitutional guaranty and that the guaranty was denied should be sufficient to warrant reversal."

Similarly, commenting on the question of prejudice, it was said at page 25 of 60 Dickinson L.Rev.: "* * * it may well be impossible to determine just in what way the accused was hurt. One doesn't normally condone a violation of fundamental constitutional rights because the individual cannot show specific damage—the violation of the right itself constitutes the damage. To compel production of specific damage items in most cases in fact amounts to a total deprivation of the right. The correct view would seem to be that the accused should not be deprived of his right unless it is demonstrated that granting of the right will interfere with the administration of justice. This is so because the right itself is held to be productive of great benefits to the accused."

Finally, at page 1454 of annotation in 48 A.L.R.2d it is stated: "Where a trial court has erred in excluding the public or a portion thereof from the courtroom during a criminal trial and the accused has made timely objection to such exclusion, it has generally been held that prejudice will be presumed without the burden being placed upon the accused to show actual prejudice."

Some courts have even gone further by stating that prejudice in these cases will be conclusively presumed. People v. Murray, 89 Mich. 276, 50 N.W. 995, 14 L.R.A. 809; State v. Osborne, 54 Or. 289, 103 P. 62; People v. Micalizzi, supra, 223 Mich. 580, 194 N.W. 540. See also annotation, supra, 21 Am.Jur.2d, Criminal Law, § 269.

In People v. Micalizzi, supra, the court was confronted with the problem of whether the defendant, to sustain his allegation that he was denied his right to public trial, must show prejudice. The court therein, quoting with approval from People v. Murray, supra, stated at page 541 of 194 N.W.:

"* * * when he [defendant] shows that his constitutional right has been violated, the law conclusively presumes that he has suffered an actual injury. I go further, and say that the whole body politic suffers an actual injury when a constitutional safeguard, erected to protect the rights of citizens, has been violated in the person of the humblest or meanest citizen of the state."

In any event, even if we adopt the implied prejudice view rather than the conclusive presumption view, we find the State here made no effort to overcome the inference of prejudice. It erroneously contends that was not its burden.

In the cases of State v. Wallace, Iowa, 152 N.W.2d 266, and State v. Jensen, 245 Iowa 1363, 1369, 66 N.W.2d 480, 483, cited by appellee, we find no constitutional issues involved and do not consider them in point. We are satisfied, where the provision of the constitution such as we have here is violated, the burden to show a lack of prejudice must be assumed by the State.

As pointed out in the many cases and authorities above set out, it would be difficult, if not impossible, in such situations to prove any definite personal injury or to prove a public injury had occurred, and to require a defendant in a criminal prosecution to do so would impair or destroy the very right that is sought to be safeguarded. In the light of these decisions we must hold the exclusion of the public during the reading of the instructions, even though done through mistake or misunderstanding, deprived defendant of his right to public trial and, in view of the State's failure to overcome the implied prejudice resulting from the above, it must be held reversible error.

V. In light of our holding in the preceding division, little consideration need be given the other assignments. Appellant seems to concede there is statutory authority for the county attorney to subpoena witnesses under the provisions of section 769.-19 of the Code. This section provides:

"The clerk of the district court, on application of the county attorney, shall issue subpoenas for such witnesses as the county attorney may require, and in such subpoenas shall direct the appearance of said witnesses before the county attorney at a specified time and place; provided that no subpoena shall issue unless an order authorizing same shall have been first made by the court or a judge thereof. After preliminary information, indictment, or information the defendant shall be present and have the opportunity to cross-examine any witnesses whose appearance before the county attorney is required by this section."

It is appellant's contention that section 769.19 relates only to the investigatory efforts by the county attorney in advance of the filing of a county attorney's true information and cannot be used for discovery, citing State v. McClain, 256 Iowa 175, 125 N.W.2d 764, 4 A.L.R.3d 134; State v. District Court, 253 Iowa 903, 114 N.W.2d 317, and 13 Iowa Law Review 264, 287. He argues the use of this power subsequent to indictment or information is, in effect, tantamount to making the rules of civil procedure relating to discovery applicable to criminal causes without statutory direction. We cannot agree. There is nothing before us to indicate the county attorney used the power granted to him under this statute to discover, but rather used it for its intended purpose, perpetuation of evidence, and, in the absence of a showing to the contrary by the party asserting the objection, the actions of the county attorney are presumed proper. See State v. Meyers, 256 Iowa 801, 803, 129 N.W.2d 88, 90, and citations.

VI. Due to errors previously considered, the case must be remanded for a new trial.

Reversed and remanded.

MOORE, RAWLINGS, BECKER and LeGRAND, JJ., concur.

GARFIELD, C. J., and SNELL, STUART and MASON, JJ., dissent.

GARFIELD, Chief Justice (dissenting).

I must dissent from Divisions I through IV of the foregoing opinion on which the reversal is based and, under this record, would affirm the conviction.

The trial commenced Monday morning, June 5, 1967 and, except for reading the court's instructions to the jury, concluded shortly after noon Tuesday, June 13. A recess was then taken until 12:30 when the court proceeded to read his instructions. This concluded at 12:59.

Counsel on both sides had been furnished a copy of the instructions. *No objection was made to them nor to the reading of them and counsel so stated*. Copies were also filed in the clerk's office for anyone to read. The original instructions were available to the jury during its deliberation. The verdict was returned at 8:59 that evening.

Twenty to 30 spectators were in attendance on the last day of the trial when final arguments to the jury were made. They left the courtroom when the recess was taken. The record does not show any were told to leave. Some of them then went to a cafeteria in the basement of the court house and later returned to the hall outside the entrance to the court room. Three of them were denied access to the room by "the outside bailiff," a retired man who served "a little bit" as bailiff.

This bailiff told one of those in the hall spectators would not be admitted during reading of the instructions. He sat just inside the door to the court room while the jury was instructed. Only once was the door opened by someone wanting to enter and the bailiff said they would not be admitted. Seats for spectators were vacant during the reading of the instructions. One of those excluded was a newspaper reporter who heard the arguments and attended "the better part of the trial," at least part of every day. He knew the jury instructions were a matter of public record in the clerk's office.

Exclusion of the few spectators was the result of misunderstanding between the trial judge and the bailiff. The judge thought he directed the bailiff not to let spectators *leave* the court room until after the jury retired to deliberate, so it would not overhear remarks about the case from any who stopped in the hall through which the jury passed. Such was the judge's intention. The bailiff, however, understood he was directed not to permit spectators to *enter* the court room until the jury passed out.

In a commendable spirit of generosity the judge assumed responsibility for the few spectators being excluded, by admitting the bailiff could have misunderstood his instructions or they might not have been clear.

No one was excluded from the court room before the jury was instructed except, as defendant requested and pursuant to common practice, witnesses were permitted in the court room only while testifying, so they would not hear the testimony of others. Of course, no complaint is—or could be—made of this. The "outside bailiff" was asked by defendant's counsel as his witness at the hearing on his motion for new trial what his duties were. He answered "To see that witnesses were not admitted until they were ready to testify and keep them from being admitted after they testified."

After hearing testimony offered by defendant in support of his motion for new trial, professional statements from the county attorney and his assistant and the two attorneys for defendant, and arguments by attorneys for each side, the court overruled the motion. He observed that after looking for prejudice to defendant from the exclusion of some spectators during the mechanical act of reading the instructions, he could find none; "there were no star chamber proceedings; what went on can be public knowledge."

It should be pointed out neither of defendant's attorneys nor apparently defend-

ant himself noticed or knew anyone was excluded from the court room at any time, except—as stated—the witnesses, until the trial judge so informed the attorneys on both sides at their homes by phone Friday evening, June 16, three days after the verdict was returned, and told them this might give rise to the problem now presented. We may observe too that defendant's counsel have had much experience in the defense of criminal cases. The judge first learned of the exclusion from the regular bailiff the day he so notified the attorneys.

The fact the attorneys were unaware, until later informed by the judge, of the circumstance which furnishes the factual basis for the majority's reversal lends support to the conclusion no reasonable possibility of prejudice appears. In fact, no actual prejudice to defendant is claimed or suggested. The record shows defendant's counsel argued to the trial court, as he did here, there was a denial of a constitutional right from which prejudice is conclusively presumed. Most of the authority for such view proceeds from quite different factual bases than we have here.

In a practical and realistic sense this defendant was not denied a public trial and the claimed violation of his constitutional and statutory right thereto was merely a technical one.

I. The purpose of the guaranty of a public trial found in Article I, section 10 Iowa Constitution is thus expressed in State v. Worthen, 124 Iowa 408, 410–411, 100 N.W. 330, 331, cited by the majority: "The constitutional guaranty of a public trial is for the purpose of securing to the accused a perfectly fair and honest consideration by his triers of the charge made against him, and, further, to prevent, in some measure at least, the giving of false testimony against him. Its purpose is not to aid him in producing false testimony in his own behalf, and by so doing defeat the ends of justice."

In Worthen the state requested that defendant's witnesses be excluded from the court room during examination of other witnesses. Defendant objected on the ground his witnesses were part of the general public and their exclusion would deny him a public trial. The requested order was granted, enforced and approved by us. Of course, as stated, in the present case all witnesses had testified long before anyone was excluded from the court room.

The majority thus enlarges somewhat upon what is said in Worthen as to the purposes or reasons for a public trial. These are asserted to be: provide accused greater security in the administration of justice (said to be perhaps the foremost reason); a buttress against unjust prosecution and aid to insuring accused a fair trial; effective restraint on possible abuse of judicial power; securing testimonial trustworthiness by inducing fear of false testimony; and notice of the trial to possible witnesses unknown to the parties.

It cannot be claimed what was done here conflicted with any of these purposes or reasons for a public trial. It is not too much to say the trial judge made every effort to assure this defendant a fair and impartial trial.

To the purposes or reasons for a public trial above suggested, the majority sees fit to add another, unsupported by any authority, that undue emphasis by the court, presumably prejudicial to accused, in reading its instructions to the jury may be discouraged by the presence of spectators in the court room.

Appellant makes no such suggestion and it has no proper place in the consideration of this appeal. There is no claim the instructions were read unfairly here. Indeed, as previously indicated, defendant's counsel affirmatively stated immediately following reading of the instructions he had no objection to the reading of them. If there were any basis for such an objection counsel would be fully aware of it at the time and it would be his duty to make prompt objection and not withhold it until his motion for new trial is filed.

II. In the trial court as well as here defendant's principal reliance seemed to be upon People v. Micalizzi (1923), 223 Mich. 580, 194 N.W. 540, 542 and what is said in People v. Teitelbaum (1958), 163 Cal.App. 2d 184, 329 P.2d 157, 172–173, as to what a public trial consists of. In arguing this ground of his motion for new trial (the only ground argued) defendant's counsel told the trial court: "There is one pertinent case—People v. Micalizzi, 194 N.W. 540." The majority also evidently places considerable reliance upon these two precedents. The Michigan case is the only one cited that bears any fair analogy to ours on the facts. The Teitelbaum decision is actually contrary to the majority's and supports the trial court's denial of a new trial here.

In Micalizzi the court room doors were locked during reading of the court's instructions and *one of defendant's attorneys* and others were refused admission. This was held to violate defendant's right to a public trial. The cited opinion is largely based on People v. Murray (1891), 89 Mich. 276, 50 N.W. 995, 14 L.R.A. 809, where each day during a trial of almost two weeks an officer, on orders from the judge, excluded from the court room all except those he regarded as "respectable citizens." One of the precedents cited by the prosecutor in resistance to the claim Murray was denied a public trial was State v. Brooks, 92 Mo. 542, 573, 5 S.W. 257, 330, where, to quote from People v. Murray (pages 998–999 of 50 N.W.); " * * * during the early stages of impaneling the jury two men were stationed, on the afternoon of one day and the forenoon of the next day, at the door of the court-room, who refused to admit any one into the court-room except jurors, witnesses, or officers of the court, or those having business in court. It appears that, when this matter was brought to the attention of the court, the court stated that no order had been made stationing men at said door, and announced that any one who wished to come into the court-room could do so, and

made an order that all persons be admitted until the seats were full."

It is clear the facts in State v. Brooks, supra, are much closer to those here, although considerably stronger for accused, than those in People v. Murray (on which, as stated, People v. Micalizzi is largely based). Yet the Murray opinion says of Brooks (page 999 of 50 N.W.): "This is not in any respect a parallel case to the one under consideration. In the Brooks Case the exclusion of the public only continued through the afternoon of one day and the forenoon of the next. In Murray's Case it lasted during the entire trial of two weeks. * * * "

State v. Richards, 126 Iowa 497, 500, 102 N.W. 439, cites State v. Brooks, supra, with apparent approval, together with State v. Worthen, supra, 124 Iowa 408, 410–411, 100 N.W. 330, 331.

People v. Micalizzi also holds the constitutional right of an accused to a public trial cannot be waived except by a plea of guilty.

On this point of waiver, Anno. 4 L.Ed.2d 2128, 2146, states: "It appears well settled that the right to a public trial may be lost by waiver or nonassertion; this principle applies in all cases without regard to whether, in a particular case, the right to a public trial is traceable to the Sixth Amendment, or to the due process clause, or to some other source."

Anno. 48 A.L.R.2d 1436, 1452, contains this: "It is generally held that an accused may waive his right to a public trial, either expressly or by failure to object in due time to the entry of an order of exclusion." See also earlier Anno. 156 A.L.R. 265, 294.

It is not asserted defendant waived his right to a public trial here but to point out that People v. Micalizzi, supra, on which so much reliance is placed, is contrary to the prevailing view as to power of an accused to waive such right, either expressly or by failure to timely object to its denial.

In People v. Teitelbaum, supra, 163 Cal. App.2d 184, 329 P.2d 157, 171–173, 26 conferences between court and counsel were held at the bench out of hearing of the jury and eight conferences between them were held in chambers. Defendant contended that because these conferences were not heard by members of the public who attended the trial nor by him he was denied his constitutional rights to a public trial and to appear and defend the action in person. The court held "We find no merit whatsoever in the contention that the trial was not a public one. * * *

"The absence of the appellant from the conferences held between court and counsel at the bench and in chambers did not, under the circumstances here, deprive him of any rights given him by * * * the Constitution 'to appear and defend, in person and with counsel,' * * *. In none of the instances of conferences at the bench or in chambers, were any matters presented to the court as to which appellant could have been of any aid to his counsel. * * *

"In our opinion the rights of an appellant under * * * the Constitution are not violated unless he is prevented from being present during the presentation of matters before the triers of fact or such other times as his absence would thwart a fair and just hearing.

"In considering the appellant's right to be present at a trial under the provision of the Fourteenth Amendment to the Constitution, Mr. Justice Cardozo in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 332, 78 L.Ed. 674, 90 A. L.R. 575; said in part: 'Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. * * * So far as the Fourteenth Amentment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' * * *

"Appellant has failed to point out any occurrences had out of his presence which in any way affected him adversely * * *."

Teitelbaum's conviction was affirmed.

III. In addition to State v. Brooks, supra, 92 Mo. 542, 573, 5 S.W. 257 (writ of error dismissed 124 U.S. 394, 8 S.Ct. 443, 31 L.Ed. 454) before cited with apparent approval by this court, as stated in Division II hereof, there is ample authority to support this dissent.

In People v. Buck (1941), 46 Cal.App.2d 558, 116 P.2d 160, 162–163, the trial court announced prior to the time he instructed the jury no one would be permitted to leave or enter the court room during "these instructions;" the doors to the room were kept locked during such time; there were a number of vacant seats; after the instructions were given the doors were reopened and several persons entered the court room. Although defendant did not raise the question in the trial court that he was denied a fair, public trial, it was raised and decided against him on appeal.

These are excerpts from the Buck opinion: "It (the order) was made to facilitate the instructing of the jury and to obviate the disturbance and distraction which is made by spectators entering or leaving while the court is giving its instructions. * * * The term 'public trial' is used in a relative sense and its meaning depends largely upon the circumstances of each particular case. *Here we cannot say that the order in question prejudiced the defendant's rights* or that he was thereby deprived of a fair, public trial. (emphasis added)." Buck's conviction was affirmed.

In People v. Cash (1959), 52 Cal.2d 841, 345 P.2d 462, 465, 466, an appeal from a death sentence for first degree murder, defendant argued he was deprived of his constitutional right to a public trial in that he did not personally consent to the removal of the trial to chambers for the playing of tape recordings, although the request

was made by his counsel. The reason for moving to chambers was because acoustics in the court room were poor. The argument was rejected and the sentence upheld by the Supreme Court of California. Buck, supra, was cited and quoted from with approval.

In State v. Collins (1957), 50 Wash.2d 740, 314 P.2d 660, 663–665, also an appeal from a death sentence for first degree murder, the prosecuting attorney asked that the court room be locked during his closing argument to the jury so it would not be disturbed by constant opening and closing of the door, the request was granted and the bailiff complied with the order. Defendant contended his constitutional right to a public trial was thereby denied and prejudice would be presumed, relying on an earlier Washington case; Tanksley v. United States (1944), 9 Cir.Alaska, 145 F.2d 58, 156 A.L.R. 257, 10 Alaska 443; Davis v. United States (1917), 8 Cir.Okla., 247 F. 394, L.R.A.1918C, 1164, and a 1909 Oregon decision. The Tanksley and Davis cases are cited by the majority here as two of what it asserts are the better-reasoned ones expressing the presently recognized rule.

Although the Washington Supreme Court did not commend what was done, it rejected defendant's contention he was denied his constitutional right to a public trial and, after thorough discussion, affirmed the sentence. People v. Buck, supra, was cited with obvious approval and quoted from at length.

Most of the cases in which members of the public have been excluded from at least part of the trial are prosecutions for rape or other sex crimes. Although decisions on the question are not uniform, many hold orders excluding spectators in such cases do not violate defendant's constitutional right to a public trial.

Harris v. Stephens and Trotter v. Stephens (1966), 8 Cir.Ark., 361 F.2d 888, affirmed denial of relief in habeas corpus to two negroes tried, convicted and sentenced to death for interracial rape of a young lady of 23. In answer to the contention the closing of the court room to spectators during the testimony of the victim denied petitioners their constitutional right to a public trial, the opinion states: "This is a frequent and accepted practice when the lurid details of such a crime must be related by a young lady. See United States v. Geise, 262 F.2d 151 (9th Cir. [Alaska] 1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959); Hogan v. State, 191 Ark. 437, 86 S.W.2d 931 (1935)." The court concluded: "petitioners were afforded a fair and impartial trial, and their constitutional rights meticulously safeguarded throughout."

In Geise v. United States (same case as United States v. Geise, just cited) the trial court, over defendant's objection, excluded from a trial for statutory rape of a girl, age 9 at time of trial, all spectators except members of the press and bar and relatives or close friends of defendant, the prosecuting witness and two other witnesses, age 7 and 11. The remaining witnesses were adults. In a motion for post-conviction relief under 28 U.S.C.A. § 2255 (Alaska was then a territory) defendant contended he was denied a public trial guaranteed by the Sixth Amendment of the Constitution.

The court held "Upon the authority of Reagan v. United States, 9 Cir., 202 F. 488, [44 L.R.A., N.S., 583] and Callahan v. United States, 9 Cir., 240 F. 683, we reject this contention and hold that, despite the exclusion, appellant's trial was a public trial." The Geise opinion then proceeds to state the facts and holding in the Reagan and Callahan cases and says of each: "That holding has not been reversed or overruled." (page 155 of 262 F.2d)

These are further excerpts from the Geise opinion: "In support of his contention that his trial was not a public trial, appellant cites Tanksley v. United States, 9 Cir., 145 F.2d 58, 156 A.L.R. 257; Davis v. United States, 8 Cir., 247 F. 394, 395; and United States v. Kobli, 3 Cir., 172 F.2d 919. Actually, as we shall show, none of

these cases supports appellant's contention." These are the three precedents (especially Tanksley v. United States, supra) the majority cites as repudiating Reagan v. United States, supra. The latest of the three (Kobli) was decided nearly 10 years prior to United States v. Geise.

The Geise opinion distinguishes the Tanksley case on the ground no child testified there and also "The Tanksley case is further distinguishable from the instant case in that the exclusion order (there) was far more sweeping than in the instant case. Obviously, the Tanksley case is not in point here." (page 156 of 262 F.2d)

In Reagan v. United States, supra (1913), 9 Cir., Alaska, 202 F. 488, 489–490, the court on its own motion, over defendant's exception, at the beginning of a trial for statutory rape of a girl under 16 (exact age not appearing), directed that the spectators leave the court room and the order was enforced. Upon appeal it was held this was not a violation of defendant's right to a public trial under the Sixth Amendment. See also United States ex rel. Orlando v. Fay (1965) 2 Cir. N.Y., 350 F.2d 967, 971, 972; Savage v. State (1969), Fla.App., 218 So.2d 776.

IV. I will not extend this dissent to comment on all the cases the majority cites, although all have been read. With the possible exception of People v. Micalizzi, supra, 223 Mich. 580, 194 N.W. 540, the factual situation in each of them is considerably more favorable to accused and, of course, less favorable to the prosecution, than we have here. The majority cites and quotes brief excerpts mainly from cases where the exclusion from the court room was for the entire trial or much of it. *This is not such a case.* As stated, no one was excluded here (except at defendant's request witnesses while not testifying) other than the few who were excluded during the brief time the instructions were read to the jury. We have no occasion to reach a decision except on the facts presented here.

It is apparent the portion of the majority opinion to which this dissent is directed is largely patterned after and closely follows State v. Schmit, 273 Minn. 78, 139 N. W.2d 800, where, over defendant's objection, at the conclusion of the state's opening statement all spectators except members of the bar and representatives of the press were excluded from the courtroom during the rest of the trial on a charge of sodomy.

The Schmit opinion thus states the question for decision (p. 804 of 139 N.W.2d): "The question squarely presented on this appeal is whether all spectators may be indiscriminately excluded *during the entire trial,* solely because of the obscene nature of the crime and of the testimony likely to be presented, without infringing on defendant's fundamental rights." (emphasis added).

The Schmit opinion adds "The question is one on which courts are not agreed, both with respect to what constitutes a public trial and the permissible extent of exclusion."

We note State v. Gionfriddo, 154 Conn. 90, 221 A.2d 851, 853, cites the Schmit case for the holding it was not a denial of defendant's constitutional right to a public trial to exclude the public during the testimony of one of four complainants in the trial of charges of rape and related offenses. The four ranged in age from 14 years, 8 months to 16 years, 10 months. Doubtless the citation just referred to is based on this from State v. Schmit (page 804 of 139 N.W.2d): "Where it appears that minors are unable to testify competently and coherently before an audience because of embarrassment or fright, temporary exclusion of the public is permissible. Our prior decisions hold that an adult witness may also be protected by temporary exclusion of the public when it appears that embarrassment prevents a full recital of the facts."

The majority devotes a good deal of space to Sirratt v. State, 240 Ark. 47, 398 S.W.2d 63, 64, which it implies is factually in point. It should be pointed out the majority has not correctly stated the impor-

tant facts in Sirratt. The exclusion of spectators there was followed on the same day by a rather lengthy cross-examination of appellant, previously begun, all of his re-direct examination, and all the testimony of another witness. The exclusionary order was repeated when court convened the next morning, still another witness testified, after which the instructions were given and the case submitted.

It is obvious the exclusionary order in Sirratt was far more sweeping than what was done here and applied during much of the testimony of accused and all that of two other witnesses, in addition to reading the instructions. The Sirratt opinion quotes extensively from People v. Murray (1891), supra, 89 Mich. 276, 50 N.W. 995, previously discussed, which bears no factual similarity to our case. What is quoted in Sirratt from 21 Am.Jur.2d, Criminal Law, section 260, page 299, as to what a trial consists of is taken from People v. Teitelbaum, supra, 163 Cal.App.2d 184, 185, 329 P.2d 157, cert. den. and appeal dismissed 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed.2d 759 and the Am.Jur.2d text cites only that case as authority for the statement.

The exclusionary order in United States v. Sorrentino (1949), 3 Cir. Pa., 175 F.2d 721, 723, a companion case to United States v. Kobli (1948), 172 F.2d 919, was also much broader than what was done here. It applied to the first day of the trial when the jury was being selected although not to the last three days during which testimony was taken. The Sorrentino opinion deals mainly with the question whether the right to a public trial may be waived. The holding is it may be and was waived and the conviction was affirmed.

More might be said. I have little objection to most of the decisions the majority cites as applied to the factual situations there involved. My view is that they have no fair application to what was done here and that, as stated, in a practical and realistic sense, this defendant was not denied a public trial, the claimed violation of his constitutional and statutory right thereto was merely technical and there is no reasonable possibility defendant was in any way harmed thereby.

V. It seems basically unfair to relieve defendant of showing he was prejudiced by the exclusion of a few spectators while the instructions were read to the jury, principally on the ground it would be virtually impossible to make any such showing, but to reverse this conviction either on the ground prejudice is conclusively presumed or the state failed to show there was none when resourceful counsel do not suggest how prejudice could result. I think the trial court was fully justified in finding, in effect, there was no reasonable possibility of prejudice.

VI. Section 793.18 Code 1966, provides: "If the appeal is taken by the defendant, the supreme court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; * * *"

Among the cases in which this statute has been applied are State v. Kelley, 253 Iowa 1314, 1318, 115 N.W.2d 184, 186, affirming a death sentence for first degree murder; State v. Neuhart, 228 Iowa 1055, 1061, 292 N.W. 791; State v. Roberts, 222 Iowa 117, 123, 268 N.W. 27, 30.

In the Kelley opinion it is said of section 793.18: "The duty placed on this court by section 793.18 is to decide criminal appeals according to the very justice of the case as shown by the record without regard for technical errors. (citation) It requires us to enter such judgment as the law demands. (citation) And we are not to consider mere technical errors which do not affect the result. (citations)"

I would hold that *under this record* the exclusion of a few spectators from the courtroom during the short time the instructions were read to the jury was a mere technical error or defect which did not affect the result of the trial.

It is not contended the evidence of guilt is insufficient. As defendant's brief asserts, "We are not concerned with the guilt or innocence of defendant." I understand the majority holds the other two errors assigned by defendant are without merit. While the majority does not pass directly on the claim the trial court abused its discretion in imposing an excessive sentence, it is unthinkable that if the case should come to us following a second trial under a similar record and sentence, absent any claimed denial of a public trial, the sentence would be held excessive. If it is the view of the majority the sentence is excessive it is duty bound to say so now and not withhold doing so.

The opinion in State ex rel. Fulton v. Scheetz, Iowa, 166 N.W.2d 874, filed April 8, 1969, concludes with this:

"In Wright v. United States, 389 F.2d 996 (8th Cir.), this appears:

" 'Not every error occurring in the course of a trial requires a reversal. Rule 52(a), Fed.R. Crim.P., provides that errors which do not affect substantive rights shall be disregarded. If upon the record as a whole, the reviewing court is certain that the asserted error did not influence the jury or had but slight effect, the verdict and judgment shall stand. (Citations)'

"The case is Affirmed."

I would apply the same logic and reach a like result here.

Essentially what the majority holds is that there was a violation of a constitutional right here which calls for a reversal regardless of whether defendant was harmed thereby. I think this is contrary to the following views of seven members of the Supreme Court expressed by Mr. Justice Black in Chapman v. California (1967), 386 U.S. 18, 21–22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709:

"We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding, as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' 28 USC § 2111. *None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.* We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." (Emphasis added)

These views were expressed in a case where there was a clear infringement by both prosecutor and trial court of petitioners' federal-constitutional right against self-incrimination—certainly a right as fundamental as that to a public trial, especially under such facts as we have here.

This case should be affirmed.

SNELL, STUART and MASON, JJ., join in this dissent.